RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0194P (6th Cir.)
File Name: 02a0194p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

GARY W. ROSE,
   *Plaintiff-Appellant,*

   *v.*

ROBERT F. STEPHENS,
individually and in his official
capacity as Secretary of the
Justice Cabinet,
Commonwealth of Kentucky,
   *Defendant-Appellee.*

No. 00-6542

Appeal from the United States District Court
for the Eastern District of Kentucky at Frankfort.
No. 99-00077—Joseph M. Hood, District Judge.

Argued: March 21, 2002

Decided and Filed: June 3, 2002

Before: NORRIS, SILER, and GILMAN, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** Bernard Pafunda, PAFUNDA LAW OFFICES, Lexington, Kentucky, for Appellant.  Sheryl G. Snyder, FROST, BROWN & TODD, Louisville, Kentucky, for Appellee. **ON BRIEF:** Bernard Pafunda, PAFUNDA LAW OFFICES, Lexington, Kentucky, for Appellant.  Sheryl G. Snyder, David L. Hoskins, FROST, BROWN & TODD, Louisville, Kentucky, for Appellee.

———————————

**OPINION**

———————————

ALAN E. NORRIS, Circuit Judge.  Plaintiff Gary W. Rose appeals the district court's grant of summary judgment for defendant Robert F. Stephens in this 42 U.S.C. § 1983 action. Plaintiff argues that his termination from the position of Commissioner of the Kentucky State Police violates the First Amendment of the United States Constitution and the Kentucky Whistleblower Act, K.R.S. Chapter 61.  For the reasons discussed below, we affirm the district court's grant of summary judgment for defendant.

**I.**

Plaintiff was appointed to the position of Commissioner of the Kentucky State Police in 1995 and was employed in this position until August 1999 when he was terminated by defendant, the Secretary of Kentucky's Justice Cabinet. Plaintiff's termination resulted from a dispute between himself and defendant over his refusal to withdraw a memorandum which he had submitted to defendant and the governor of Kentucky announcing his decision to eliminate Pat Simpson's position as deputy police commissioner. Simpson was promoted to the position of deputy commissioner by plaintiff at the request of the governor in 1997.

The memorandum contains a lengthy description of disruptive and inefficient actions taken by Simpson and announces plaintiff's decision to abolish the position of deputy commissioner and reassign Simpson to a lower ranking position as a result of his conduct. The memorandum includes allegations that Simpson interfered with hiring and disciplinary decisions; that he authorized unnecessary and wasteful equipment purchases; that he requested unnecessary transfers of personnel; and that he spread rumors that the governor intended to fire plaintiff and another officer.

In his deposition plaintiff acknowledged that he wrote the memorandum in his official capacity as commissioner, and that he included the detailed allegations against Simpson primarily as background information to support his decision to eliminate Simpson's position. Furthermore, plaintiff stated that the "operative paragraph" of the memorandum was on page three where he stated his intention to eliminate Simpson's position.

Plaintiff filed suit against defendant, the Justice Cabinet, and the Commonwealth of Kentucky alleging that his discharge violated 42 U.S.C. § 1983 and 42 U.S.C. § 1985, as well as provisions of the Kentucky Whistleblower Act. The district court granted defendants' motion to dismiss with respect to plaintiff's § 1985 claims, finding that plaintiff failed to state a claim under that statute. The court also dismissed most of plaintiff's § 1983 claims against defendants in their official capacities because those claims were barred by the Eleventh Amendment. Finally, the court refused to exercise supplemental jurisdiction over plaintiff's state law claim because the state statute did not waive the state's sovereign immunity from suit in federal court. As a result, plaintiff's only remaining claims were the § 1983 claims against defendant for injunctive relief in defendant's official capacity and for monetary and injunctive relief in defendant's individual capacity.

Defendant moved for summary judgment on plaintiff's remaining claims, arguing that the memorandum was not

protected speech under the First Amendment. The district court granted summary judgment for defendant, finding that the memorandum was not entitled to First Amendment protection because it did not address a matter of public concern. Plaintiff appeals both the court's grant of summary judgment with respect to his § 1983 claims and the court's refusal to exercise supplemental jurisdiction over his state law claim.

## II.

We review a district court's grant of summary judgment *de novo*. *See United Nat'l Ins. Co. v. SST Fitness Corp.*, 182 F.3d 447, 449 (6th Cir. 1999). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

### A.    Analytical Framework of the First Amendment Claim

In *Connick v. Meyers*, 461 U.S. 138 (1983), the Supreme Court established a two-part inquiry for determining when the discharge of a public employee violates the First Amendment. The threshold question is whether the employee's "speech may be fairly characterized as constituting speech on a matter of public concern." *Dambrot v. Central Michigan Univ.*, 55 F.3d 1177, 1186 (6th Cir. 1995) (internal citations and quotations omitted). If the speech relates to a matter of public concern, then the court employs the balancing test outlined in *Pickering v. Board of Education*, 391 U.S. 563 (1968), to determine if the employee's free speech interests outweigh the efficiency interests of the government as an employer. *Dambrot,* 55 F.3d at 1186.

The district court found that the memorandum in this case did not relate to a matter of public concern, and, therefore, did not reach the second step of this analysis. The court based its determination on three factors: (1) the memorandum did not allege any illegal activity; (2) plaintiff never attempted to

read as permitting them. We agree with the district court that the language of the act does not waive the state's immunity from suit in federal court under the Eleventh Amendment.

The statute at issue provides that employees alleging violations of the act may bring a civil action for injunctive or punitive damages. K.R.S. § 61.103(2). The statute specifies that:

> The action may be filed in the Circuit Court for the county where the alleged violation occurred, the county where the complainant resides, or the county where the person against whom the civil complaint is filed resides or has his principal place of business.

K.R.S. § 61.103(2). "[I]n order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in *federal court*." *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 241 (1985) (emphasis original). Therefore, this language, which specifically waives Kentucky's sovereign immunity only in its own courts, is insufficient to waive the state's immunity from suit in federal court.

## III.

For the reasons stated above, the district court's grant of summary judgment for defendant is **affirmed.**

16.070. The commissioner is invested with the discretionary authority to, among other things, establish local police headquarters, K.R.S. § 16.070(4), appoint and promote officers, K.R.S. § 16.050, and adopt and repeal rules governing the conduct of officers and the operation of the department, K.R.S. § 16.080. The cabinet-level designation and broad range of discretionary authority granted under Kentucky law to the police commissioner demonstrate that plaintiff unquestionably occupied a category one position.

The final step in our analysis is determining whether the memorandum addressed political or policy-related issues. This inquiry is also easily satisfied in this case. As plaintiff himself acknowledged in his deposition, the "operative paragraph" of the memorandum was the announcement that he intended to eliminate the position of deputy police commissioner and demote Simpson. Moreover, the bulk of the memorandum concerned Simpson's performance in that position and the problems that his appointment and actions had created within the police force. All of these issues are clearly related to police department policies and the memorandum thus fits easily within the scope of the exception.

In light of the foregoing analysis, we hold that the district court did not err in granting summary judgment for defendant with respect to plaintiff's § 1983 claims because plaintiff's speech was not protected under the First Amendment.

## C.   State Law Claim

The final issue in this case is whether the district court erred in refusing to exercise supplemental jurisdiction over plaintiff's claim under the Kentucky Whistleblower Act, K.R.S. Chapter 61. The district court concluded that it lacked jurisdiction over this claim because the language of the act only waived Kentucky's sovereign immunity for claims brought in state court, thus retaining the state's Eleventh Amendment immunity from suit in federal court. Plaintiff argues that the language of the act does not specifically preclude actions in federal court and, therefore, should be

make the allegations public; and (3) most of the allegations concerned decisions made prior to the time when the conflict between plaintiff and Simpson arose. We do not express an opinion on whether the district court correctly determined that the memorandum did not address a matter of public concern, because, as explained below, in the situation presented by this case the *Pickering* balance favors the government as a matter of law.

In *Connick* the Court fashioned a framework for protecting the principle that the government "cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression," 461 U.S. at 142, while still permitting the government some leeway when it acts in its role as an employer to operate an efficient workplace. In a separate line of cases dealing with the First Amendment rights of public employees, the Court also has recognized that the government has a separate but related interest in securing employees who will loyally implement the policies of its democratically elected officials. *Elrod v. Burns*, 427 U.S. 347, 367 (1976) (stating that the politically loyal employees are necessary "to the end that representative government not be undercut by tactics obstructing the implementation of policies of the new administration, policies presumably sanctioned by the electorate."). Although the Court determined that political patronage dismissals normally violate the First Amendment in this line of cases, it also created the exception that termination of public employees in policymaking or confidential positions may be based solely on their political affiliation without violating the First Amendment. *Id.*; *Branti v. Finkel*, 445 U.S. 507 (1980).

The Court has not addressed the question of whether the *Elrod/Branti* exception applies to the situation where a policymaking or confidential employee is discharged on the

basis of actual speech rather than political affiliation.[1] The question is also one of first impression in this circuit. We hold that the exception does apply in this situation and adopt the rule that, where a confidential or policymaking public employee is discharged on the basis of speech related to his political or policy views, the *Pickering* balance favors the government as a matter of law.

Three distinct approaches have emerged among the federal courts of appeal that have addressed the question of how to deal with situations where both the *Connick* and *Elrod/Branti* lines of cases potentially apply. The first approach, which has been adopted by the Second Circuit, limits the application of the *Elrod/Branti* exception to employment decisions that are based solely on political affiliation. *See Lewis v. Cowen*, 165 F.3d 154, 162 (2d Cir. 1999). While the Second Circuit has recognized that the government's interest in terminating an employee necessarily increases where that employee is a

---

[1]The Court has not directly addressed this issue. However, in *O'Hare Truck Serv., Inc. v. City of Northlake, Ill.*, 518 U.S. 712 (1996), it implied that the *Pickering* balance may apply in "mixed" cases such as this one:

> A reasonableness analysis will also accommodate those many cases, perhaps including the one before us, where specific instances of the employee's speech or expression, which require balancing in the *Pickering* context, are intermixed with a political affiliation requirement. In those cases, the balancing *Pickering* mandates will be inevitable.

518 U.S. at 719. *O'Hare* held that the government could not constitutionally condition the award of a city towing contract to an independent contractor on the basis of political affiliation. *Id.* at 720. The Court did not directly address the situation presented by the instant case because the plaintiff in *O'Hare* was clearly not a policymaking or confidential employee. As we discuss in more detail below, the rule we adopt today is consistent with the Court's statements in *O'Hare* because we hold that the *Pickering* balance applies to these mixed cases but that the balance favors the government as a matter of law in a specific subset of them, *i.e.*, where the employee speaks on political or policy-related issues.

---

demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved.

445 U.S. at 518. This circuit has outlined four general categories of positions that satisfy this standard:

> **Category One:** positions specifically named in relevant federal, state, county or municipal law to which discretionary authority with respect to the enforcement of that law or the carrying out of some other policy of political concern is granted;
> **Category Two:** positions to which a significant portion of the total discretionary authority available to category one position-holders has been delegated; or positions not named in law, possessing by virtue of the jurisdiction's pattern or practice the same quantum or type of discretionary authority commonly held by category one positions in other jurisdictions;
> **Category Three**: confidential advisors who spend a significant portion of their time on the job advising category one or category two position-holders on how to exercise their statutory or delegated policymaking authority, or other confidential employees who control the lines of communication to category one positions, category two positions or confidential advisors.
> **Category Four:** positions that are part of a group of positions filled by balancing out political party representation, or that are filled by balancing out selections made by different governmental agents or bodies.

*McCloud v. Testa*, 97 F.3d 1536, 1557 (6th Cir. 1996) (footnotes omitted). An examination of the authority granted to the state police commissioner under Kentucky law indicates that plaintiff clearly falls within category one, and, therefore, that the exception applies in this case.

Kentucky law provides that the police commissioner is a member of the governor's cabinet and "the head and chief executive officer of the department." K.R.S. §§ 15A.020,

on political or policy issues ensures that the content of the employee's speech directly implicates the loyalty requirements of the position and thus will adversely affect a central aspect of the working relationship in all cases.[3]  This renders the fact-intensive inquiry normally required by *Pickering* unnecessary because under these circumstances it is appropriate to presume that the government's interest in efficiency will predominate.

In short, the rule we adopt today simply recognizes the fact that it is insubordination for an employee whose position requires loyalty to speak on job-related issues in a manner contrary to the position of his employer, and, as the Supreme Court has recognized, "employees may always be discharged for good cause, such as insubordination . . . ."  *Elrod*, 427 U.S. at 366.  In this situation an individualized balancing of interests is unnecessary.

### B.    *Application of the* Elrod/Branti *Exception*

Having determined that the *Elrod/Branti* exception applies to the discharge of a policymaking or confidential employee on the basis of speech, the remaining questions we address are whether plaintiff occupied a policymaking or confidential position and whether the memorandum at issue addressed matters related to politics or policy.

The Supreme Court in *Branti* set out the standard for determining to what positions the exception applies:

[T]he ultimate inquiry is not whether the label "policymaker" or "confidential" fits a particular position; rather, the question is whether the hiring authority can

---

[3]We do not adopt the broader position of the Ninth Circuit precisely because it is not necessarily the case that the government's interest as employer will outweigh the employee's free speech rights in all cases. This restriction is necessary because it is possible to conceive of situations where the government might terminate an employee for speech completely unrelated to the working relationship and thus would lack the justification that the speech impacted the efficient operation of the office.

policymaker, and, therefore, that the *Pickering* balance begins to favor the government, it has rejected the application of the policymaking exception where the termination is based on speech rather than political affiliation.  *McEvoy v. Spencer*, 124 F.3d 92, 103 (2d Cir. 1997).

The second approach, which is taken by the First, Seventh, and Tenth Circuits, applies the exception in situations where the employee's speech relates to either his political affiliation or substantive policy views.  *Barker v. City of Delaware City*, 215 F.3d 1134, 1139 (10th Cir. 2000); *Bonds v. Milwaukee County*, 207 F.3d 969, 979 (7th Cir. 2000); *Flynn v. City of Boston*, 140 F.3d 42, 47 (1st Cir. 1998).  This approach recognizes the inherent inconsistency in a rule that protects a policymaking employee who overtly expresses his disloyalty while denying that same protection to one who merely belongs to a different political party.  *See, e.g., Vargas-Harrison v. Racine Unified Sch. Dist.*, 272 F.3d 964, 971-72 (7th Cir. 2001) (stating that it would be a "strange rule" that protects actual attacks by policymaking employees but not mere affiliation in the "wrong party") (internal quotations and citations omitted).  These courts limit the application of the exception, however, out of concern that the rationale underlying it is inapplicable to situations where an employee's speech does not involve political or policy issues. *Id.* at 973-74 (noting that the assumption of disruption in the efficient functioning of government does not apply where the employee's speech does not impact his official duties).

The final approach, taken by the Ninth Circuit, applies the exception in all situations where the employee is at the policymaking level.  *See Fazio v. City and County of San Francisco*, 125 F.3d 1328, 1332 (9th Cir. 1997).  Under this approach, a court first determines whether the employee is in a policymaking or confidential position, and that inquiry is "dispositive of any First Amendment retaliation claim." *Biggs v. Best, Best & Kreiger*, 189 F.3d 989, 994-95 (9th Cir. 1999).

We adopt an approach similar to that of the First, Seventh and Tenth Circuits, and hold that where an employee is in a policymaking or confidential position and is terminated for speech related to his political or policy views, the *Pickering* balance favors the government as a matter of law. This rule flows logically from the Supreme Court's recognition in the political patronage cases that the government has a legitimate interest in securing employees who will loyally implement its policies. *See Rutan v. Republican Party of Illinois*, 497 U.S. 62, 74 (1990). Permitting the government to dismiss employees who fall within the policymaking or confidential categories when they voice opinions on political or policy-related issues is an appropriate means of promoting that interest because the government already enjoys the right to choose or dismiss those employees on the basis of their political views. *See id.* As noted above, it would make little sense to permit the government to preemptively dismiss employees on the basis of political affiliation alone, while restricting its ability to respond to an overt act of disloyalty by an employee in the same position.

In addition, this rule is consistent with the balance struck by the Court in *Pickering* between the government's interest as an employer in an effective and efficient workplace and the individual employee's right to speak as a citizen on matters of public concern. The Court recognized in *Pickering* that dismissal of an employee in a position which requires loyalty or confidentiality would implicate "significantly different considerations" than those present in the discharge of a lower-level public employee. 391 U.S. at 570 n.3. Specifically, the Court stated that:

It is possible to conceive of some positions in public employment in which the need for confidentiality is so great that even completely correct public statements might furnish a permissible ground for dismissal. Likewise, positions in public employment in which the relationship between superior and subordinate is of such a personal and intimate nature that certain forms of public criticism of the superior by the subordinate would

seriously undermine the effectiveness of the working relationship between them can also be imagined.

*Id.* In other words, the government's interest in appointing politically loyal employees to certain positions converges with its interest in operating an efficient workplace when dealing with policymaking employees because loyalty by those employees is an essential requirement for the efficient functioning of the workplace.[2] Accordingly, when an employee occupies a position for which political loyalty is a legitimate criterion, the nature of the position itself weights the balance in favor of the government. *See Rankin v. McPherson*, 483 U.S. 378, 388 (1987) (stating that whether the statement "has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary" is a "pertinent consideration" in the *Pickering* balance); *see also McEvoy*, 124 F.3d at 103 (noting that an employee's role as a policymaker normally weighs "heavily" on the government's side of the *Pickering* balance).

When such an employee speaks in a manner that undermines the trust and confidence that are central to his position, the balance definitively tips in the government's favor because an overt act of disloyalty necessarily causes significant disruption in the working relationship between a confidential employee and his superiors. *See Pickering*, 391 U.S. at 570 n.3. The additional restriction that this presumption applies only to cases where the employee speaks

---

[2]In this respect we note that the Court in *Elrod* rejected the government's argument that patronage dismissals of lower-level employees were justified by the need for efficiency, stating that "[t]he inefficiency resulting from the wholesale replacement of large numbers of public employees every time political office changes hands belies this justification." 427 U.S. at 364. However, it nevertheless determined that the government's interest in securing loyal employees was sufficient *in itself* to justify the practice for policymaking and confidential employees. *Id.* at 367. The situation presented by the instant case implicates both the government's interest in loyalty and its interest in efficiency and, therefore, provides an even stronger justification for permitting the government flexibility than the pure patronage dismissal case.