**Louis P. WARGO, Jr., Plaintiff,**

**v.**

**Honorable Paul C. MOON, Defendant.**

**No. 3:04 CV 7036.**

United States District Court,
N.D. Ohio,
Western Division.

June 21, 2004.

John D. Franklin, Law Office of John D. Franklin, Tracy A. Lipinski, Law Office of John D. Franklin, Toledo, OH, for Louis P. Wargo, Jr., Plaintiff.

Elizabeth A. McCord, Montgomery, Rennie & Jonson, Kimberly Vanover Riley, Montgomery, Rennie & Jonson, Linda L. Woeber, Montgomery, Rennie & Jonson, Cincinnati, OH, for Paul C. Moon, In his individual capacity as Judge of Ottawa County Court of Common Pleas, Defendant.

## ORDER

CARR, District Judge.

This is a First Amendment case brought by Louis Wargo, Jr., against his former employer, the Honorable Paul C. Moon, Judge of the Ottawa County, Ohio, Court of Common Pleas. Plaintiff claims that defendant terminated plaintiff's employment for exercising his right to free speech in violation of the First Amendment and Ohio public policy. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

Pending is defendant's motion to dismiss each of plaintiff's claims. For the following reasons, defendant's motion shall be granted.

## BACKGROUND

Plaintiff began working as a probation officer for defendant in 1987, while defendant was a Judge of the Port Clinton, Ohio, Municipal Court. In 1991, after defendant was elected to serve as Judge of the Ottawa County Court of Common Pleas, plaintiff became defendant's Chief Adult Probation Officer and Chief Bailiff.

In 2002, plaintiff's son announced his candidacy for Ottawa County Juvenile/Probate Judge, running as an independent supported by the Ottawa County Republican Party. Defendant was and remains a member of the Ottawa County Democratic Party.

In May, 2002, plaintiff parked his car, on which were displayed stickers supporting his son's candidacy, in the Ottawa County Court of Common Pleas parking lot. Defendant allegedly instructed plaintiff to remove the stickers or park in the street.

Plaintiff subsequently sent anonymous letters to local newspapers raising questions about the integrity and ethical behavior of the county government and school systems. Although the letters were never published in any newspaper, they specifically accused defendant of creating a questionable magistrate judge position and setting the magistrate up to be his "stooge." (Doc. 4, Ex. A, at 3). Plaintiff's letters further accused defendant of unethically collecting both a salary and retirement pay and hiding this information from the public to avoid ballot issues that would negatively impact his candidacy by encouraging write-in opposition. Plaintiff also accused defendant and his staff of improperly using visiting judges and working too few hours.

Though the letters had been sent anonymously, defendant became aware of them. He instructed plaintiff to attend a meeting on August 26, 2002. At the meeting, defendant confronted plaintiff about the contents of the communication and terminated plaintiff's employment.

## STANDARD OF REVIEW

The court should grant a motion to dismiss only if it is obvious that no relief can be granted under any set of facts that can be proven consistent with the allegations. *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). The court must accept as true all of plaintiff's factual allegations. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). Dismissal is appropriate only if it appears beyond doubt that the complain-

ing party can prove no set of facts in support of the claims that would entitle him or her to relief. *Pfennig v. Household Credit Servs.*, 295 F.3d 522, 525–26 (6th Cir.2002) (citing *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998)).

## DISCUSSION

### A. Plaintiff's First Amendment Claim

To recover under 42 U.S.C. § 1983, plaintiff must first plead and prove that: 1) he was denied a right secured by the Constitution and 2) that deprivation was permitted by one acting under color of state law. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). There is no dispute here that defendant is a state actor and that he acted under color of state law when he terminated plaintiff's employment. Defendant alleges, however, that plaintiff's claim does not establish that he was denied one of his constitutional rights.

It is a well settled principle of constitutional law that the State cannot condition public employment on a basis that infringes on an employee's constitutionally protected rights of freedom of speech. *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Branti v. Finkel,* 445 U.S. 507, 515–516, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). The Supreme Court has established a two-part inquiry, based on the Court's explanation in *Pickering* that, to determine whether a public employee's right to free speech has been violated, the employee's right to free speech must be balanced against government's interests. *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). First, the court must determine "whether the employee's speech may be fairly characterized as constituting speech on a matter of public concern." *Dambrot v. Central Michigan Univ.,* 55 F.3d 1177, 1186 (6th Cir.1995) (citing *Connick,* 461 U.S. at 146, 103 S.Ct. 1684) (internal quotation omitted). "[I]f the speech is found to touch upon a matter of public concern," then "the employee's First Amendment rights have been violated" where "the employee's free speech interests outweigh the efficiency interests of the government as employer, ...." *Id.* at 1186; *see also Connick,* 461 U.S. at 142, 103 S.Ct. 1684 ("Our task ... is to seek 'a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.' " (quoting *Pickering,* 391 U.S. at 568, 88 S.Ct. 1731)).

There are limited exceptions to this rule involving what is generally termed, though not limited to, a "confidential" or "policymaking" employee. *See Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Branti,* 445 U.S. at 518, 100 S.Ct. 1287 ("the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved"). If a "confidential" or "policymaking" employee is "discharged on the basis of speech related to his political or policy views, the *Pickering* balance favors the government as a matter of law." *Rose v. Stephens,* 291 F.3d 917, 921 (6th Cir.2002).

#### 1. Plaintiff was a Confidential Employee

The Sixth Circuit has established four categories of positions which fall within the *Elrod/Branti* exception for confidential employees:

> **Category One:** positions specifically named in relevant federal, state, county, or municipal law to which discretionary authority with respect to the enforcement of that law or the carrying out of

some other policy of political concern is granted;

**Category Two:** positions to which a significant portion of the total discretionary authority available to category one position-holders has been delegated; or positions not named in law, possessing by virtue of the jurisdiction's pattern or practice the same quantum or type of discretionary authority commonly held by category one positions in other jurisdictions;

**Category Three:** confidential advisors who spend a significant portion of their time on the job advising category one or category two position-holders on how to exercise their statutory or delegated policymaking authority, or other confidential employees who control the lines of communications to category one positions, category two positions or confidential advisors;

**Category Four:** positions that are part of a group of positions filled by balancing out political party representation, or that are filled by balancing out selections made by different governmental agents or bodies.

*McCloud v. Testa,* 97 F.3d 1536, 1557 (6th Cir.1996).

Plaintiff's positions as bailiff and chief probation officer fall within category three of this scheme. The Sixth Circuit explains that:

> Category three is formulated to comport with the discussion in *Branti* indicating that a state governor may "believe that the official duties of various assistants who help him write speeches, explain his views to the press, or communicate with the legislature cannot be performed effectively unless those persons share his political beliefs and party commitments." *Branti,* 445 U.S. at 518, 100 S.Ct. 1287 .... This category also includes those who control the lines of communication to category one or category two position-holders per *Faughender* [*v. City of North Olmsted, Ohio,* 927 F.2d 909, 914 (6th Cir.1991) ].

*McCloud,* 97 F.3d at 1557.

As defendant's bailiff and chief probation officer, plaintiff controlled lines of communication to defendant. A bailiff, *inter alia,* handles confidential court information, manages the docket, and has access to the files and records of the judge. *Balogh v. Charron,* 855 F.2d 356 (6th Cir. 1988). A probation officer's duties include "indirect yet meaningful input on politically sensitive discretionary decisions by judges regarding bail, sentencing, and defendant rehabilitation." *Larson v. Cantrell,* 974 F.Supp. 1211, 1217 (N.D.Ind. 1997) (internal quotations omitted). Thus, a probation officer's duties likewise involve control of the lines of communication to a judge. Additionally, a bailiff or probation officer spends considerable time advising judges. Because plaintiff was employed as both Chief Bailiff and Chief Adult Probation Officer to defendant, he was a confidential employee within the *Elrod/Branti* exception.

### 2. Plaintiff's speech was related to his political or policy views

As the Court noted in *Pickering,* there are "positions in public employment in which the relationship between superior and subordinate is of such a personal and intimate nature that certain forms of public criticism of the superior by the subordinate would seriously undermine the effectiveness of the working relationship between them ...." 391 U.S. at 570 n. 3, 88 S.Ct. 1731. A person serving as a Judge's Chief Bailiff and Chief Adult Probation Officer occupies such a position. In the instant case, plaintiff's speech was sharply critical of defendant's political and policy-based decisions, and could undermine defendant's belief that plaintiff

would fulfill his employment duties loyally—i.e., as directed by defendant, rather than as the plaintiff desired—and properly—i.e., otherwise fulfill the duties of his position, including maintaining as confidential those matters as to which confidentiality is crucial. Thus, defendant was justified in terminating plaintiff's employment because the government has a legitimate "interest in securing employees who will loyally implement its policies" to assure efficient operation of the workplace. *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 74, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990).

Because plaintiff, a confidential employee, was discharged on the basis of speech related to his political or policy views, the *Pickering* balance favors the defendant as a matter of law. *Rose,* 291 F.3d at 921. Plaintiff's First Amendment claim must, therefore, be dismissed.

### B. Plaintiff's Ohio Public Policy Claim

Ohio recognizes that "[p]ublic policy warrants an exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason which is prohibited by statute." *Collins v. Rizkana,* 73 Ohio St.3d 65, 69, 652 N.E.2d 653 (1995). To recover from an employer for a violation of Ohio public policy, plaintiff must establish:

1) That a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element);

2) That dismissing employees under the circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element);

3) The plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element); and

4) The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element).

*Id.* at 69–70, 652 N.E.2d 653.

The clarity and jeopardy elements are questions of law to be determined by the court. *Id.* at 70, 652 N.E.2d 653. The causation and overriding justification elements are questions of fact. In the instant case, however, there is no need to analyze any of these elements in view of the determination that the plaintiff, as a confidential employee, had no cognizable First Amendment claim. Plaintiff therefore cannot point to any underlying statutory (or constitutional) violation on which to predicate his public policy claim. Accordingly, defendant's motion to dismiss the public policy claim shall be granted.

## CONCLUSION

In light of the foregoing, it is

ORDERED THAT defendant's motion to dismiss be, and hereby is, granted.

So ordered.