# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2972

_____

| | | |
|---|---|---|
| Randall R. Bradford, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Mike Huckabee, Individually | * | Eastern District of Arkansas. |
| and as Governor of the State | * | |
| of Arkansas, et al., | * | |
| | * | |
| Defendants - Appellants. | * | |

_____

Submitted: September 17, 2004
Filed: January 10, 2005

_____

Before LOKEN, Chief Judge, BEAM and BYE, Circuit Judges.

_____

LOKEN, Chief Judge.

Randall Bradford resigned from his policy-making position as Executive Chief Information Officer ("ECIO") of the State of Arkansas. Bradford's letter to Governor Mike Huckabee stated that the resignation would be effective two weeks later, as Bradford intended to criticize the Governor's administration to the press and to the legislature while still serving as ECIO. Not surprisingly, Governor Huckabee instead made the resignation effective immediately. Bradford then commenced this action against Huckabee, three members of the Governor's staff, and the Director of the Arkansas Department of Information Systems. The complaint asserts numerous

claims for injunctive, declaratory, and damage relief under state and federal law, including § 1983 damage claims alleging that Bradford was constructively discharged in violation of his First Amendment free speech rights as a public employee. Defendants appeal the district court's denial of their motion to dismiss these § 1983 claims on qualified immunity grounds. Concluding that Bradford has failed to state § 1983 claims under the First and Fourteenth Amendments, we reverse.

## I. Background

Created by statute in 2001, the ECIO is appointed by and serves at the will of the Governor, Ark. Code § 25-33-103(a), and has broad responsibilities, including to formulate and promulgate "policies . . . for information technology in the state," to develop "legislation and rules and regulations affecting electronic records management," to develop "information technology security policy for state agencies," and to "[a]dvise state agencies in acquiring information technology service." Ark. Code Ann. § 25-33-104(a). Bradford was appointed by Governor Huckabee in October 2001. He was the first person to hold the ECIO position.

As relevant here, Bradford's 54-page complaint alleges that he was "retaliated against for attempting to communicat[e] with or report to State Legislators having oversight," and was "stripped of his authority and reprimanded" for attempting to comply with his statutory duty "to interface with and report to the legislature and provide them with legislative oversight." Consequently, Bradford alleges, he "resigned as a result of being constructively discharged." The complaint supports these allegations by attaching a number of e-mail messages between Bradford and the Governor's staff between January and April 2002. In these messages, staff criticized Bradford for "cozying up to the legislators" he had invited to a committee meeting, and warned Bradford to "be careful about involving the [legislature] in your meetings" because "[i]nviting them into the process blurs the lines of responsibility

in state government." The complaint also includes Exhibit Q, a copy of Bradford's June 13, 2002 resignation letter, in which he stated:

> Unfortunately, I have concluded that I must resign . . . for professional reasons. I do not believe that the current working environment within your staff is conducive to effective management. . . . In order to be effective, I would need to be allowed to work in a collaborative environment, with a spirit of cooperation, with my Information Technology Oversight Committee and the Joint Committee for Advanced Communications and Information Technology.[1] Those relationships have been strained by your staff's attempts to restrict communication to the point that my office cannot be as effective as it should be. . . . I am giving two weeks' notice effective today . . . .

Upon receiving the letter, Governor Huckabee sent Bradford a notice terminating his employment "effective 12:00 noon today, June 13, 2002." The complaint alleges that Bradford "intended to make a statement to the press and to the legislature [after tendering his resignation]. As a result of his intended speech, Mr. Bradford was terminated two weeks early."

Defendants moved to dismiss portions of the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In an initial order, the district court recited that defendants contended they are entitled to qualified immunity from Bradford's § 1983 damage claims, but the court denied the motion to dismiss those claims without discussing the qualified immunity issue. Defendants appealed the interlocutory order, and we remanded because we lacked jurisdiction absent a qualified immunity determination. Bradford v. Huckabee, 330 F.3d 1038 (8th Cir. 2003). On remand,

---

[1]The Oversight Committee has 12 members appointed by the Governor from the private sector and state and local government to "advise the [ECIO] on the allocation of information technology resources in the state." Ark. Code § 25-33-106. The Joint Committee is a standing committee of the General Assembly with oversight responsibilities on information technology issues. Ark. Code §§ 10-3-1703, -1704.

the district court held that the defendants are not entitled to immunity because "Bradford's right to speak about matters of public administration over which he had supervision certainly outweigh[s] any interest defendants could assert in keeping the information from the legislature and the public." We review de novo the denial of a motion to dismiss on the basis of qualified immunity. To prevail at this stage of the proceedings, defendants must show that they are entitled to qualified immunity on the face of the complaint. Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir. 1996), cert. denied, 519 U.S. 1149 (1997). The exhibits Bradford attached to his complaint are part of the complaint for this purpose. See Fed. R. Civ. P. 10(c); Meehan v. United Consumers Club Franchising Corp., 312 F.3d 909, 913 (8th Cir. 2002).

## II. Discussion

Qualified immunity protects public officials from § 1983 damage actions if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all." County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998); see Domina v. Van Pelt, 235 F.3d 1091, 1096 (8th Cir. 2000).

It is now well established that "[a] State may not condition public employment on an employee's exercise of his or her First Amendment rights." O'Hare Truck Serv., Inc. v. City of Northlake, 518 U.S. 712, 717 (1996). But public employees do not have an unlimited First Amendment right to say what they please, even on issues of great public importance. For example,"the Governor of a State may appropriately believe that the official duties of various assistants who help him write speeches, explain his views to the press, or communicate with the legislature cannot be performed effectively unless those persons share his political beliefs and party commitments." Branti v. Finkel, 445 U.S. 507, 518 (1980). As we said in Johnson

v. City of West Memphis, 113 F.3d 842, 844 (8th Cir. 1997), personal loyalty is "an appropriate requirement" if a public official "reports directly to the [governor] and his duties include public relations and responsibility for . . . long-range planning."

Viewed from this perspective, we fail to discern any First Amendment content to Bradford's constructive discharge claim.  The e-mail messages and Bradford's resignation letter reveal a not-uncommon executive branch power struggle between an agency head who wanted to include key legislators in the agency's day-to-day affairs, and a governor's office that insisted upon a more arms-length relationship between the two branches of government.  When Bradford did not get his way, he declared his work environment intolerable and quit.  To label his resignation a constructive discharge seems a serious distortion of that term, as it has come to be used in federal employment discrimination law.  But even if the resignation could be deemed a constructive discharge, Bradford resigned because of a policy dispute, not because he had been punished for exercising or attempting to exercise his public employee's First Amendment right "as a citizen, in commenting upon matters of public concern." Pickering v. Board of Education, 391 U.S. 563, 568 (1968).  As the Supreme Court reminded us in Connick v. Myers, 461 U.S. 138, 143 (1983):

> The repeated emphasis in Pickering on the right of a public employee "as a citizen . . ." was not accidental.  This language, reiterated in all of Pickering's progeny, reflects . . . the common-sense realization that government offices could not function if every employment decision became a constitutional matter.

This leaves Bradford's claim that his First Amendment rights were violated when he was terminated two weeks early because he "intended to make a statement to the press and to the legislature" after tendering his resignation.  In other words, Bradford claims a constitutional right to retain his position as a policy-making agency head while he publicly criticized the Governor after resigning.  There is no such constitutional right, at least not in the First Amendment to the United States

Constitution. "[T]hough a private person is perfectly free to uninhibitedly and robustly criticize a state governor's legislative program, we have never suggested that the Constitution bars the governor from firing a high-ranking deputy for doing the same thing." Waters v. Churchill, 511 U.S. 661, 672 (1994) (plurality opinion); see Rose v. Stephens, 291 F.3d 917, 922-23 (6th Cir. 2002); Lewis v. Cohen, 165 F.3d 154, 168-69 (2d Cir. 1999) (Weinstein, J., concurring), and cases cited.

For these reasons, we conclude that Bradford's complaint fails to state a First Amendment § 1983 claim against any defendant. Accordingly, defendants are entitled to qualified immunity, and the district court erred in denying their motion to dismiss these claims. See Siegert v. Gilley, 500 U.S. 226 (1991). The court also erred in not dismissing the § 1983 claims against the defendants acting in their official capacities. The court's order dated July 8, 2003, is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

_____