RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0057p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

JACQUELINE GAINES,

*Plaintiff-Appellant*,

v.

DENISE CROSS; MONTGOMERY COUNTY COMMON PLEAS COURT,

*Defendants-Appellees*.

No. 25-3233

───────────────

Appeal from the United States District Court for the Southern District of Ohio at Columbus.[*]
No. 3:24-cv-00187—Edmund A. Sargus, Jr., District Judge.

Argued: December 10, 2025

Decided and Filed: February 27, 2026

Before: BATCHELDER, GILMAN, and LARSEN, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Marc D. Mezibov, Cincinnati, Ohio, for Appellant. Cooper D. Bowen, MONTGOMERY JONSON LLP, Cincinnati, Ohio, for Appellees. **ON BRIEF:** Marc D. Mezibov, MEZIBOV BUTLER, Cincinnati, Ohio, Emmett E. Robinson, ROBINSON LAW FIRM LLC, Cleveland, Ohio, for Appellant. Cooper D. Bowen, Linda L. Woeber, MONTGOMERY JONSON LLP, Cincinnati, Ohio, for Appellees.

───────────────

[*]On June 26, 2024, Plaintiff filed her complaint in the United States District Court for the Southern District of Ohio at Dayton. On November 18, 2024, Hon. Michael J. Newmann recused himself and all judges in the Dayton seat of court and referred the matter for random reassignment to another district seat.

---

**OPINION**

---

ALICE M. BATCHELDER, Circuit Judge. Political candidates, including judicial candidates, have broad free-speech rights to "speak in support of their campaigns." *Williams-Yulee v. The Florida Bar*, 575 U.S. 433, 457 (2015). But that right does not divest a duly elected government of its power to control certain speech by its confidential and policymaking employees. Jacqueline Gaines, then a domestic-relations court magistrate, contends that her court and its administrative judge, Denise Cross, abridged Gaines's freedom of speech when Cross terminated her employment over her campaign speech that cast the court's operations and Gaines's fellow magistrate in a negative light. Because Gaines held a confidential or policymaking position within the domestic-relations court and spoke on political or policy-related matters in a manner that undermined the trust and confidence that Cross had in Gaines's continued service, her termination did not violate the First Amendment. The district court's dismissal of her claim under 42 U.S.C. § 1983 is therefore **AFFIRMED**.

**I.**

Denise Cross served as the administrative judge for the Montgomery County, Ohio, Court of Common Pleas, Domestic Relations Division (DR Court). In 2011, Jacqueline Gaines was appointed to serve as a magistrate for the DR Court. Her duties included presiding over legal hearings, deciding cases, and mediating settlements, as well as performing related administrative functions. While serving as a magistrate, Gaines declared her candidacy in the 2024 Republican primary for an upcoming vacancy on the DR Court bench. Jennifer Petrella, who served alongside Gaines as a DR Court magistrate and court administrator, also declared her candidacy.

Gaines disseminated campaign literature advocating for her election over Petrella's. In one mailer, Gaines urged voters to compare her and Petrella's weekly schedules: while Gaines allegedly carried a robust docket of complex domestic-relations cases, Petrella ostensibly heard "a handful of cases" for one half-day per week. According to Gaines's mailer, the vast majority of Petrella's working hours were spent on administrative matters, including submitting grant

applications, planning human-resources events and parties, and attending meetings. In another mailer, Gaines promoted herself as a "wife, mother, full-time magistrate, and family law scholar" before urging voters to question whether "someone without children of her own ([Gaines's] opponent)" ought to "interview [voters'] children and decide their custody and visitation arrangements."

These advertisements offended Cross. According to Gaines, Cross thought Gaines had "violated the integrity of the [c]ourt" and had cast it in a "negative light." When Gaines returned to work after losing the Republican primary, Cross confronted her and terminated her employment as a magistrate. Cross subsequently retired.

Gaines sued Cross, in both her official and personal capacities, and the DR Court, bringing a single claim under 42 U.S.C. § 1983 for violation of Gaines's free-speech rights enshrined in the First Amendment to the United States Constitution. The district court dismissed Gaines's suit for failure to state a claim. *Gaines v. Cross*, 771 F. Supp. 3d 982, 998 (S.D. Ohio 2025). In particular, the district court held that (1) the DR Court was "not a legally cognizable entity" subject to suit, (2) sovereign immunity barred Gaines's claim for money damages against Cross in her official capacity, and (3) Gaines failed to state a plausible freedom-of-speech claim against Cross. Gaines brings this timely appeal.

## II.

"We review de novo a district court's decision to grant a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Cooperrider v. Woods*, 127 F.4th 1019, 1027 (6th Cir. 2025) (citation omitted). "To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Determining whether a complaint states a facially plausible claim requires courts to construe the complaint in a light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and decide whether there is enough factual content to allow 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (citation omitted).

**A.**

On appeal, Gaines challenges only the district court's holding that she failed to state a plausible freedom-of-speech claim against Cross. Gaines's briefing before this Court makes no mention of the district court's dismissal of the claims against the DR Court or application of sovereign immunity to the money-damages claims against Cross in her official capacity. Because Gaines failed to raise any arguments challenging these two conclusions, we deem those arguments waived. *See United States v. Russell*, 26 F.4th 371, 374–75 (6th Cir. 2022).

**B.**

This Court engages in a "two-part inquiry for determining when the discharge of a public employee violates the First Amendment." *Rose v. Stephens*, 291 F.3d 917, 920 (6th Cir. 2002) (citing *Connick v. Myers*, 461 U.S. 138, 149–52 (1983)). The threshold inquiry is a question of law: "whether the employee's speech may be fairly characterized as constituting speech on a matter of public concern." *Dambrot v. Cent. Mich. Univ.,* 55 F.3d 1177, 1186 (6th Cir. 1995) (citation modified). If the answer is no, then "the court's inquiry ends" since the speech is not protected and we need not scrutinize the reason for the discharge. *Id.* "If the speech relates to a matter of public concern, then the court employs the balancing test outlined in *Pickering v. Board of Education,* 391 U.S. 563 (1968), to determine if the employee's free speech interests outweigh the efficiency interests of the government as an employer." *Rose*, 291 F.3d at 920 (citation modified).

But in some circumstances, *Pickering*'s usually "fact-intensive" inquiry is unnecessary: "where an employee is in a policymaking or confidential position and is terminated for speech related to his political or policy views, the *Pickering* balance favors the government as a matter of law." *Id.* at 922–23. Although the Supreme Court has generally restricted the government from "condition[ing] public employment on a basis that infringes the employee's constitutionally protected interests in freedom of expression," the government retains a significant interest in operating an efficient workplace. *Id.* at 920 (quoting *Connick*, 461 U.S. at 142). Likewise, "the government has a separate but related interest in securing employees who will loyally implement the policies of its democratically elected officials." *Id.* at 920–21 (citing *Elrod v. Burns*, 427

U.S. 347, 367 (1976)). "[T]he government's interest in appointing politically loyal employees to certain positions converges with its interest in operating an efficient workplace when dealing with policymaking employees because loyalty by those employees is an essential requirement for the efficient functioning of the workplace." *Id.* at 923. Drawing from the Supreme Court's holdings in *Connick*, *Elrod*, and *Branti v. Finkel*, 445 U.S. 507, 517–18 (1980), we held in *Rose* that these interests justify "the discharge of a policymaking or confidential employee on the basis of speech . . . related to politics or policy." *Rose*, 291 F.3d at 921, 923–924, 923 n.2.

Since Cross maintained these related interests in the efficient operation of her court and in the loyal implementation of her policies, she could have rightly dismissed a DR Court employee if (1) the employee "occupied a policymaking or confidential position" and (2) the employee's at-issue speech "addressed matters related to politics or policy." *Id.* at 924 (citation modified). The district court thoroughly reasoned that Gaines held a confidential, policymaking position as a DR Court magistrate, and since Gaines makes no argument to the contrary on appeal, we will not disturb the district court's conclusion on this point. *See Russell*, 26 F.4th at 374–75.

Turning to whether the two campaign advertisements address matters related to politics or policy, we hold that they do. At the crux of this question is whether "the content of the employee's speech directly implicates the loyalty requirements of the position," which would necessarily "adversely affect a central aspect of the working relationship." *Rose*, 291 F.3d at 923. Two messages from Gaines's mailers clearly fit this bill. One mailer unambiguously implies that Petrella's court-appointed responsibilities, such as planning "office parties" and "human resources events," are trivial. Not only is this message clear from the text, but Gaines explicitly wanted the public to draw this conclusion: this mailer implores voters to "Compare and Contrast . . . Gaines' [sic] Weekly Schedule VS Opponent Weekly Schedule." Gaines contends that she merely sought to highlight her qualifications for office relative to those of her opponent. But by emphasizing their respective work schedules and casting her opponent's court-appointed duties as trivial, she necessarily undermined the policy decisions of the DR Court's administrative judge: Cross. That also undermined the trust and working relationship between Gaines and Cross. "[T]he First Amendment does not require a public office to be run as a

roundtable for employee complaints over internal office affairs." *Latham v. Off. of Atty. Gen. of State of Ohio*, 395 F.3d 261, 266 (6th Cir. 2005) (quoting *Connick*, 461 U.S. at 149). It certainly does not require the roundtable to be broadcast to the public.

The other mailer explicitly calls for voters to question whether Petrella, as "someone without children of her own" is qualified to "interview [voters'] children and decide their custody and visitation arrangements." Again, the thrust is clear: Petrella's alleged childlessness makes her less competent to make decisions for the DR Court. And again, Gaines counters by claiming that this is merely a comparison of two candidates for office. But this comparison is not so neatly cabined to Gaines's and Petrella's desired position of judge. By implicating Petrella's competency to render domestic-relations decisions for the court, the mailer necessarily criticizes Petrella's competence to do so *as a magistrate*. And this intrinsically speaks to a DR-Court policy decision: retaining Petrella's current appointment.

We similarly dismissed a terminated public employee's attempts to reframe his speech as unrelated to political or policy views in *Tompos v. City of Taylor*, 644 F. App'x 678, 683 (6th Cir. 2016). Tompos, a fire chief allegedly terminated over his public criticism of budget cuts to his fire department, "protest[ed] that he 'did not speak out on budget decisions or budgetary processes'; 'his statements to the press and City Council [were] about *safety issues* affecting Taylor citizens, . . . *not* political or policy views.'" *Id.* (second alteration in original). But we held that the second *Rose* inquiry—whether Tompos's speech addressed politics or policy—was "easily satisfied" because his speech was "inextricably bound up in the Mayor's budgetary policies." *Id.* (citation omitted). Likewise, Gaines cannot reframe her speech about a fellow court-appointed magistrate's aptitude to preside over domestic-relations matters as merely a comparison of two candidates. Nor can she use the same justification to paper over her trivializing of her fellow magistrate's court-appointed duties. Her campaign speech was inextricably bound up in the policies of the court over which Cross presided.

We need not decide today whether political-campaign speech is *per se* related to politics or policy, but here, that context does not favor Gaines. Since the campaign mailers addressed matters related to politics or policy, we find no error in the district court's application of *Rose* to Gaines's termination.

**C.**

Gaines proffers several counterarguments to *Rose*'s applicability; all are unavailing. First, Gaines contends that her termination was unlawful because she was never insubordinate. To reach this conclusion, Gaines asks us to read the "insubordination" language in *Rose* to require an employee's actual disobedience of a superior's prior directive, such as a refusal to retract an offending statement or a decision to publish offending speech over a command to the contrary. *See Rose*, 291 F.3d at 923. But we rejected this construction of *Rose* in *Latham*, 395 F.3d at 266. There we reaffirmed that "it *is* insubordination for an employee whose position requires loyalty to speak on job-related issues in a manner contrary to the position of his employer." *Id.* (quoting *Rose*, 291 F.3d at 923) (emphasis added). An employer does not need to show an employee's "act of refusal" or "outright rebellion" to justify terminating that employee's employment. *Id.* (emphasis removed). It is sufficient that Gaines spoke on matters of DR-Court policy in a manner contrary to Cross's position.

Second, Gaines maintains that she never expressed disloyalty or contradicted Cross's policy choices, so her speech cannot be fairly characterized as insubordination. On this point, Gaines cites, in passing, this Court's decision in *Scarbrough v. Morgan County Board of Education*, 470 F.3d 250, 258–59 (6th Cir. 2006). But we expressly held in that case that the employee's "speech and conduct d[id] not implicate either his political position or his substantive policy views." *Id.* at 259. Here, Gaines trivialized the duties assigned by Cross to Petrella and questioned Petrella's competence to decide cases on behalf of the DR Court. Cross's policy position was inherent in her choice to retain Petrella and delegate certain tasks to her. Gaines spoke contrarily to those positions and did so publicly, further implicating her disloyalty. In short, Gaines's advertisements "clearly relate[] to [DR-Court] policies and . . . fit[] easily within the scope of the exception." *See Rose*, 291 F.3d at 925.

Third, Gaines argues that *Rose* is inapplicable because she was not speaking in her capacity as a DR Court magistrate. We rejected this argument in *Schwamberger v. Marion County Board of Elections*, 988 F.3d 851, 857 (6th Cir. 2021). Attempting to escape the *Rose* presumption, the terminated employee in *Schwamberger* argued that her "statements were made as a private citizen 'exercising her First Amendment rights'" and merely expressed "her own

political or policy viewpoints." *Id*. But this argument "misse[d] the point because her speech implicated policy concerns." *Id.* "Because she was a policymaking employee, and because her statements concerned [her employer's] policies, her speech was unprotected." *Id.*; *see also Dixon v. Univ. of Toledo*, 702 F.3d 269, 274, 277 (6th Cir. 2012) (upholding the termination of an employee for expressing her "*personal* opinion and viewpoint" in an op-ed published in the employee's personal capacity). Gaines's speech, even if not uttered as a magistrate, is likewise unprotected.

Fourth, Gaines contends the district court failed to apply *Rose* with regard to the standard of review under Federal Rule of Civil Procedure 12(b)(6). Specifically, Gaines takes issue with the district court's conclusions that (1) her speech "could be characterized as insubordination," (2) her policy statements "would make it more difficult for Judge Cross to trust Ms. Gaines to loyally implement her polices as an elected official," and (3) "[a] listener might also understand from her campaign literature that Ms. Gaines was being critical of her employer, Judge Cross, for how she managed the [DR Court]." *See Gaines*, 771 F. Supp. 3d at 996–97. According to Gaines, terms like "could," "would," and "might" are incongruent with Rule 12(b)(6). But over-parsing the decision below will not create an issue of fact where none exists. The district court's use of hypothetical diction merely paraphrases the relevant authority. *See, e.g.*, *Latham*, 395 F.3d at 266 (noting that the plaintiff's speech "could have made it difficult for her employer to trust her"); *id.* (holding that *Rose* "focuse[s] on how the speech would affect the employer's ability to maintain a working relationship with his or her employees"); *Scarbrough*, 470 F.3d at 258 (finding that the plaintiff's speech "would unfairly be characterized as insubordination"); *Simasko v. Cnty. of St. Clair*, 417 F.3d 559, 563, 565 (6th Cir. 2005) (holding that the plaintiff's actions "could have caused" his employer to question his loyalty and were a valid reason for termination).

Fifth, Gaines argues that her status as a judicial candidate grants her essentially *carte blanche* authority to speak in support of her campaign so long as she does not violate the Ohio Code of Judicial Conduct. But she provides no authority for this contention, and we are not convinced that *Rose* is inapplicable merely because Gaines was running for office. We acknowledge that Gaines had "a First Amendment right to speak in support of [her] campaign."

*Williams-Yulee*, 575 U.S. at 457; *see also Republican Party of Minn. v. White*, 536 U.S. 765, 788 (2002). But as Gaines acknowledges, neither case addresses the free-speech rights of public employees. And in *Williams-Yulee*, the Court *upheld* a restriction on judicial candidate activities. 575 U.S. at 457. The government's interest in the implementation of its policies is not rendered moot merely because one of its confidential or policymaking employees declares her candidacy for office. The rule that Gaines requests would create a vicious cycle undermining the very interest Gaines purports to champion. Unconstrained by the principles stated in *Rose*, a successful employee-candidate would have vast freedom to speak in support of her campaign, including to the detriment of her government employer. But upon taking office, she might find herself impotent to implement her mandate as soon as her confidential or policymaking employees declared their own candidacies for office. Far from protecting the freedom of speech in elections, this rule would render that speech pointless.

Nor is Gaines's supposed compliance with the Ohio Code of Judicial Conduct of any significance. *Rose* applies even when a public employee's speech is lawful. And Gaines's own speech demonstrates how lawful speech might undermine the efficient operation of the government and the loyal implementation of its policies. These interests—not whether the speech violates a professional code—underly our decision in *Rose*.

Sixth and finally, Gaines asks us to apply strict scrutiny because Cross applied a content-based restriction on Gaines's speech. We recognize the usual connection between content-based restrictions and their review under strict scrutiny. *See, e.g.*, *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). But the Supreme Court adopted a balancing test for free-speech claims by public employees speaking on matters of public concern. *Pickering*, 391 U.S. at 568. And *Elrod*, *Branti*, and *Rose* explicitly contemplate the termination of public employees' employment for content-based—even viewpoint-based—reasons. Because Gaines served in a confidential or policymaking position, the government need not satisfy strict scrutiny.

## III.

For the foregoing reasons, we affirm the judgment of the district court.