RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 21a0037p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
───────────────

C. SUE SCHWAMBERGER,

> *Plaintiff-Appellant*,

*v.*

MARION COUNTY BOARD OF ELECTIONS; F. JOHN MEYER, individually and in his official capacity as former Director of the Marion County Board of Elections,

> *Defendants-Appellees*.

No. 20-3575

───────────────

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 3:19-cv-02626—Jack Zouhary, District Judge.

Argued:  January 12, 2021

Decided and Filed:  February 17, 2021

Before:  CLAY, GILMAN, and THAPAR, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:**  J.C. Ratliff, Marion, Ohio, for Appellant.  Jeffrey A. Stankunas, ISAAC WILES BURKHOLDER & TEETOR, LLC, Columbus, Ohio, for Appellee Marion County Board of Elections.  Susan S.R. Petro, WILLIAMS & SCHOENBERGER CO., L.L.C., Columbus, Ohio, for Appellee F. John Meyer.  **ON BRIEF:**  J.C. Ratliff, Marion, Ohio, for Appellant.  Jeffrey A. Stankunas, Matthew R. Aumann, ISAAC WILES BURKHOLDER & TEETOR, LLC, Columbus, Ohio, for Appellee Marion County Board of Elections.  Susan S.R. Petro, Richard A. Williams, WILLIAMS & SCHOENBERGER CO., L.L.C., Columbus, Ohio, for Appellee F. John Meyer.

—————————————

**OPINION**

—————————————

RONALD LEE GILMAN, Circuit Judge.  C. Sue Schwamberger, a former deputy director of the Marion County Board of Elections (the Board), brought suit against the Board and its former director, F. John Meyer.  She asserted 12 causes of action in connection with her termination, only 3 of which involve federal constitutional claims.  These three claims, brought under 42 U.S.C. § 1983, allege that the defendants' actions constituted (1) First Amendment retaliation, (2) a violation of the Fourteenth Amendment's Due Process Clause, and (3) a violation of the Fourteenth Amendment's Equal Protection Clause.

The defendants moved to dismiss Schwamberger's complaint.  After dismissing the federal causes of action, the district court declined to exercise supplemental jurisdiction over the state-law claims.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

**A.      Factual background**

### 1.  Ohio's county boards of elections

Schwamberger's former employer is the election authority for Marion County, established under Ohio Revised Code (R.C.) § 3501.06.  In setting up county boards of elections, R.C. § 3501.06(A) stipulates that "[t]here shall be in each county of the state a board of elections consisting of four qualified electors of the county, who shall be appointed by the secretary of state," and who shall serve as the secretary's representatives.  R.C. § 3501.06(B) provides that each county board's partisan makeup must be balanced, evenly split between "board members . . . from the political party which cast the highest number of votes for the office of governor at the most recent regular state election" and the party that placed second.  R.C. §§ 3501.06(B)(1), (2).  Put simply, each county board must have four members divided equally between the two major parties.

Four sections of Ohio's Revised Code are especially relevant to this case. First, the deputy director (here, Schwamberger) and the director (in 2018, Meyer) are always members of opposite political parties. *See* R.C. § 3501.091 ("The director and deputy director shall be of opposite political parties . . . ."). Second, board members' responsibilities include appointing and removing directors, deputy directors, and other board employees. R.C. § 3501.11(D). The third pertinent section provides that deputy directors serve at the pleasure of their county boards, meaning that a county board "may decide by the affirmative vote of at least three members that the services of a deputy director are unnecessary and such deputy director then shall not be employed." R.C. § 3501.09. Finally, the secretary of state can remove and suspend board employees. R.C. § 3501.16 ("The secretary of state may summarily remove or suspend any member of a board of elections, or the director, deputy director, or any other employee of the board, for neglect of duty, malfeasance, misfeasance, or nonfeasance in office, for any willful violation of . . . the Revised Code, or for any other good and sufficient cause.").

### 2.   *Schwamberger's employment by the Board*

Schwamberger worked for the Board without any significant problems until the fall of 2018. Her first position as a part-time clerk started in October 2000, and she was promoted to senior clerk approximately ten years later. Schwamberger assumed her deputy-director position in October 2011. She continued in this role until her November 8, 2018 termination.

### 3.   *Tensions with Director Meyer*

Schwamberger was not subject to any disciplinary proceedings, write-ups, or reprimands prior to the fall of 2018, but tensions began in early 2015 when the Board appointed Meyer as its new director. Prior to Meyer's appointment, Schwamberger had worked with two directors, Sophie Rogers and David Little, with no apparent friction.

Schwamberger contends that she began experiencing a hostile work environment soon after Meyer became director. Per Schwamberger's complaint, Meyer allegedly called her "incompetent" and "stupid," stole credit for her work, falsely implied that he was her boss instead of an equal, accessed her computer files and personal communications without permission, and even "bugged her office."

### 4. Schwamberger's termination

Schwamberger's son ran for County Prosecutor in 2018. As a result, the Board barred her from administering that year's elections, which were instead managed by Meyer. The election process proceeded on schedule, with a primary election in May, a special election in August, and a general election in November. Schwamberger's first formal disciplinary incident also occurred that autumn in the form of a written reprimand from the Board and a three-day suspension. What caused the reprimand was not explained by either Schwamberger or the Board.

The general election was held on November 6, 2018. Two days later, the Board called a special meeting at which Schwamberger, per her complaint, "verbally attempted to present" the Board with a "list of errors, discrepancies, problems, and/or possible criminal violations" related to the 2018 election cycle. She claimed that two primary-election votes were uncounted, that 31 special-election votes were inaccurately recorded, and that 254 general-election votes had not been correctly "unloaded." Schwamberger alleged that these errors occurred because of flawed policies regarding the administration of elections in Marion County. After she presented these and other alleged errors to the Board, the Board convened an executive session and voted 3–1 to terminate her for impermissibly commenting on the election process, and therefore on policy and political issues related to her deputy-director position.

## B.     Procedural background

Schwamberger timely filed her complaint in the United States District Court for the Northern District of Ohio, asserting 12 causes of action. The district court analyzed the three alleged constitutional claims for any violation of the First and Fourteenth Amendments. It ultimately found that Schwamberger's constitutional claims were meritless. The court therefore granted the defendants' motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure and declined to exercise supplemental jurisdiction over the state-law claims.

## II.  ANALYSIS

### A.      Standard of review

We review de novo a district court's dismissal of a complaint under Rule 12(b)(6). *Theile v. Michigan*, 891 F. 3d 240, 243 (6th Cir. 2018).  In our review, we accept the plaintiff's factual allegations as true, but the complaint "must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Matthew N. Fulton, D.D.S., P.C. v. Enclarity, Inc.*, 962 F.3d 882, 887 (6th Cir. 2020) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted).  A plaintiff need not demonstrate a probable right to relief, but must plead facts sufficient to raise a reasonable expectation that discovery will reveal evidence of the alleged wrongdoing. *Cates v. Crystal Clear Techs., L.L.C.*, 874 F.3d 530, 534 (6th Cir. 2017) (citations omitted).

Although we read the complaint generously, we do not presume facts not alleged therein. *Associated Gen. Contractors of Cal.*, *Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  We also "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 539 (6th Cir. 2012) (citing *Twombly*, 550 U.S. at 555) (internal quotation marks and citation omitted).

### B.      Schwamberger did not raise a viable First Amendment retaliation claim

This court set forth a two-part test in *Rose v. Stephens*, 291 F.3d 917, 920 (6th Cir. 2002), to determine when the discharge of a public employee supports a First Amendment retaliation claim.  First, the plaintiff must show that her speech touched on "a matter of public concern." *Id.* (quoting *Dambrot v. Cent. Mich. Univ.*, 55 F.3d 1117, 1186 (6th Cir. 1995)).  "The question . . . is one of law, to be reviewed *de novo.*" *Dambrot*, 55 F.3d at 1186.  Second, the plaintiff must show that her speech deserves protection under the balancing test outlined in *Pickering v. Board of Education*, 391 U.S. 563 (1968), which weighs whether her free-speech interests "outweigh the efficiency interests of the government as an employer." *Rose*, 291 F.3d at 920.

Schwamberger's speech, which addressed how the 2018 election was conducted, clearly related to "a matter of public concern," *see Dambrot*, 55 F.3d at 1186, because an election is a

"matter of political, social, or other concern to the community," *Connick v. Myers*, 461 U.S. 138, 146 (1983). Schwamberger therefore satisfies the first part of *Rose*'s two-part test to evaluate First Amendment retaliation claims. *See Rose*, 291 F. 3d at 920.

But she does not satisfy the second part. In *Elrod v. Burns*, 427 U.S. 347, 367 (1976), the Supreme Court determined that "policymaking" employees may be discharged based on political affiliation. "The three-justice plurality opinion and two-justice concurrence in *Elrod* together held . . . that 'a nonpolicymaking, nonconfidential government employee can[not] be discharged or threatened with discharge from a job that he is satisfactorily performing upon the sole ground of his political beliefs.'" *Carver v. Dennis*, 104 F.3d 847, 850 n. 5 (6th Cir. 1997) (quoting *Elrod*, 427 U.S. at 375) (Stewart, J. concurring). The Court later clarified that "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position," but "whether the hiring authority can demonstrate that party affiliation is an appropriate requirement" for the public office in question. *Branti v. Finkel*, 445 U.S. 507, 518 (1980). And in 2002, this court in *Rose* ruled that *Elrod/Branti* applies, and the *Pickering* balancing test therefore favors the government "as a matter of law," when "a policymaking or confidential employee is discharged on the basis of actual speech rather than political affiliation." 291 F. 3d at 921-22.

Schwamberger's deputy-director position made her a policymaking employee because, under Ohio Law, "[t]he director and deputy director [of the Board] shall be of opposite political parties." R.C. § 3501.09. In *McCloud v. Testa*, 97 F.3d 1536, 1557 (6th Cir. 1996), this court delineated four categories of such employees. Schwamberger's deputy-director position clearly falls under *McCloud's* fourth category, which includes positions "that are part of a group of positions filled by balancing out political party representation," or that are "filled by balancing out selections made by different governmental agents or bodies." *Id.* at 1557. Schwamberger's position is filled by balancing political representation, which clearly falls under *McCloud*.

Schwamberger's contrary arguments are unconvincing. She contends, for example, that she did not actually participate in administering the November 2018 elections because her son was running for office. Schwamberger further asserts that her November 8 statements were made as a private citizen "exercising her First Amendment rights." Both points are

unpersuasive, however, because Schwamberger—although barred from participating in administration duties for the election in question—remained an officer of the Board. Her position as the Board's deputy director, not her participation or duties, is the material point. *See, e.g.*, *Collins v. Voinovich*, 150 F.3d 575, 578 (6th Cir. 1998) (holding that when the makeup of a panel must be balanced by political affiliation, the "balancing qualifies these positions as category-four positions" under *McCloud*).

Schwamberger correctly asserts (and the defendants do not dispute) that her November 8 speech proximately caused her termination. The Board voted to terminate Schwamberger immediately after she presented her "list of errors, discrepancies, problems, and/or possible criminal violations" at the open public meeting. But her argument that her speech represented only "her own political or policy viewpoints" misses the point because her speech implicated policy concerns. She alleged, for example, that the Board's policy choices caused votes to be improperly counted. Because she was a policymaking employee, and because her statements concerned the Board's election policies, her speech was unprotected. *See Tompos v. City of Taylor*, 644 F. App'x 678, 683 (6th Cir. 2016) ("[G]iven Tompos's status as a policymaking employee, and because Tompos's statements were policy-related, the district court did not err in granting summary judgment to the City.").

## C.    Schwamberger did not raise a viable Fourteenth Amendment due process claim

We now turn to Schwamberger's Fourteenth Amendment claims. The first such claim, focused on due process, is raised when government employees demonstrate that they are "entitled to continued employment" that creates a protected property interest under state law. *Bailey v. Floyd Cnty. Bd. of Educ.*, 106 F.3d 135, 141 (6th Cir. 1997) (citations and internal quotation marks omitted). The Supreme Court has made clear that proving the existence of a property interest requires that a "person . . . must have more than an abstract . . . desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

Schwamberger has not demonstrated such a property interest. Under Ohio law, she was an at-will employee who served at the pleasure of the Board and who could be removed from her

deputy-director position without cause at any time. *See Christophel v. Kukulinsky*, 61 F.3d 479, 481-82 (6th Cir. 1995) (concluding that a public employee lacked a property interest under Ohio law because he served "at the pleasure of" his employer). Schwamberger correctly notes that Ohio's secretary of state may remove the deputy director only for "good and sufficient cause." R.C. § 3501.16. But she was removed by the Board, not the secretary of state, so any restrictions on the latter are irrelevant. *See* R.C. § 3501.09 ("[O]fficers [like the deputy director] shall continue in office, *at the pleasure of the board*, for two years.") (emphasis added).

In addition, as deputy director, Schwamberger was an "unclassified employee" under Ohio law. R.C. § 124.11(A)(2) (specifying that "unclassified" employees include "election officers"); R.C. §§ 3501.01(U)(6), 3501.14 (providing that "elections officers" include "employees of a board of elections," such as the deputy director). As an unclassified employee, Schwamberger lacked a sufficient property interest in her public employment to establish a Fourteenth Amendment due process claim. *See Christophel*, 61 F.3d at 482. ("[U]nclassified civil servants have no property right to continued employment.").

In sum, Schwamberger was an unclassified at-will employee not entitled "to any pre-deprivation process whatsoever." *See Bailey*, 106 F.3d at 141. The district court therefore did not err in dismissing her due process claim.

**D.     Schwamberger did not raise a viable Fourteenth Amendment equal protection claim**

This leaves us with Schwamberger's remaining constitutional claim, as set forth in her complaint, that the Board acted "arbitrarily," thereby violating the Equal Protection Clause by terminating her instead of "any other employee [who] was the cause of the errors, discrepancies, problems, and/or possible criminal violations." (The employee she is presumably referencing—Meyer—was actually fired for cause by the secretary of state in January 2019.) But even if the Board *did* act "arbitrarily" regarding her discharge, its actions do not create a constitutional claim.

Arbitrary actions by the government do not, without more, give rise to a constitutional violation. *See Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 606-07 (2008) (refusing to recognize a "class-of-one" theory in the public-employment context, noting that "a claim that the

State treated an employee differently from others for a bad reason, or for no reason at all, is simply contrary to the concept of at-will employment," and highlighting "the common-sense realization that government offices could not function if every employment decision became a constitutional matter") (citations and internal quotation marks omitted).

Of particular importance in the present case is that the complaint nowhere alleged disparate treatment based on membership in a protected class. The closest Schwamberger came to alleging any such impermissible discrimination was when she alleged, with regard to her due process claim, that her "termination was . . . based on [unspecified] personal motivations." She also alluded to "gender" and "age" once in her complaint, but she did so in another context relating to a state-law claim.

Schwamberger attempted to belatedly assert a disparate-treatment claim in her reply brief. Such a claim *is* potentially actionable in the public-employment context. *See Deleon v. Kalamazoo Cnty. Rd. Comm'n*, 739 F.3d 914, 917-18 (6th Cir. 2014) (noting that the elements necessary to establish an equal protection claim under 42 U.S.C. § 1983, and to establish a violation of Title VII, are "the same"). But the fact remains that the Equal Protection Clause portion of Schwamberger's complaint not once references age or sex, nor points to any similarly situated individuals whom the Board treated differently.

Finally, although Schwamberger's reply brief attempted to rectify her complaint's shortcomings, this is not a permissible way to amend a complaint. *See, e.g., Bey v. Remondi*, No. 16-CV-693, 2018 WL 6696914, at *4 (N.D. Ohio Dec. 20, 2018) (holding that "a plaintiff may not amend her complaint in a memorandum in opposition") (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)). Her allegations, moreover, fail to provide the proof of "purposeful discrimination" necessary to raise a viable disparate-treatment claim. *See Woodruff v. Ohman*, 29 F. App'x 337, 344 (6th Cir. 2002) ("This court has ruled that the showing a plaintiff must make is identical under Title VII and § 1983," and includes providing proof that "she was a victim of purposeful discrimination.") (internal citation omitted). Nor are we required to accept as true ostensibly factual allegations made in the reply brief that are, in effect, legal conclusions. *See Handy-Clay v. City of Memphis*, 695 F.2d 531, 539 (6th Cir. 2012) (internal citations and quotation marks omitted).

**E.**     **Schwamberger's state-law claims**

This brings us to Schwamberger's remaining causes of action.  The district court permissibly concluded that this case is unsuitable for further federal litigation.  *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.").  Here, "the interests of judicial economy and the avoidance of multiplicity of litigation" do not "outweigh our concern over needlessly deciding state law issues." *See Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006).  Schwamberger's state-law claims are therefore best left to be decided by the state courts of Ohio.

## III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.