NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0246n.06

Nos. 20-1232/1803

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| MATTHEW NICHOLS, | ) | **FILED** |
| Plaintiff-Appellant, | ) | May 19, 2021 |
|  | ) | DEBORAH S. HUNT, Clerk |
| v. | ) |  |
|  | ) | ON APPEAL FROM THE |
| WILLIAM DWYER; CITY OF | ) | UNITED STATES DISTRICT |
| WARREN, MICHIGAN; JAMES R. | ) | COURT FOR THE EASTERN |
| FOUTS, | ) | DISTRICT OF MICHIGAN |
| Defendants-Appellees. | ) | OPINION |
|  | ) |  |

BEFORE:   MOORE, COOK, and STRANCH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.**   Patrol officer Matthew Nichols worked in the bargaining unit of the Warren Police Department for nearly two decades before he was appointed Deputy Police Commissioner, a non-bargaining unit position governed by his individual Employment Agreement.  Under that contract and the applicable collective bargaining agreement (CBA), if Nichols was removed from his position as Deputy Commissioner and from the Department altogether for disciplinary reasons, he had the right to return to the bargaining unit and to invoke the four-step grievance procedure of the CBA, which authorized the union to compel arbitration.

In the summer of 2018, Nichols was placed on unpaid administrative leave for his conduct during an arrest.  A disciplinary hearing was held in June 2019, and he was fired from the Department soon after.  When Nichols tried to compel arbitration under the CBA, the City

informed him that he was not entitled to the rights provided by the CBA. Nichols brought this suit seeking damages for violations of his due process rights and state law and an order compelling arbitration under the CBA. The district court denied his motion to compel arbitration and granted Defendants' motion to dismiss the complaint. We **AFFIRM** in part and **REVERSE** in part.

## I.    BACKGROUND

### A.    Factual Background

These facts are drawn from Nichols's Amended Complaint and its attached documents, as well as documents he submitted in response to Defendants' motion to dismiss that were referenced in the complaint and are central to his claim. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

In February 2017, Nichols was appointed Deputy Commissioner. James R. Fouts, Mayor of Warren, announced the appointment in a letter, and then-Police Commissioner Jere Green issued a personnel order formalizing the appointment. (R. 55-6, PageID 1637) Nichols and the City entered into an Employment Agreement, signed by Fouts and the city clerk. Under the Agreement, governed by Michigan law, Nichols reported directly to both the Mayor and William Dwyer, the Police Commissioner, who assigned his daily duties. Nichols acknowledged that he would serve "at the pleasure of the Mayor," and could be "terminated at any time and for any reason with or without cause, and without prior notice." (Emp. Agmt. ¶¶ 1, 10, R. 50-1, PageID 1469, 1471) Upon removal from his appointed position, Nichols had the right to return to his former position. (*Id.* ¶ 1, R. 50-1, PageID 1469) The CBA similarly provided that even though a Deputy Commissioner is not in the bargaining unit, (CBA Art. 36(a), R. 55-8, PageID 1648), if appointed from the bargaining unit and then "voluntarily or involuntarily removed from the[] exempt position," he or she would be "afforded the same rights to return to the bargaining unit as currently exists for an appointed Captain." (*Id.* at Art. 36(C), R. 55-8, PageID 1648–49) In turn, the CBA

provides that a Captain—a bargaining unit position—previously appointed from the rank of Lieutenant who is removed voluntarily or involuntarily from his position "shall be returned to his/her former Lieutenant's rank." (*Id.* at Art. 36(b), R. 55-8, PageID 1648)  The Agreement also provided that:

> In the event the Mayor terminates or suspends the Deputy Commissioner for disciplinary reasons under circumstances that could cause his removal from the department or inability to return as a lieutenant, the Deputy Commissioner will be afforded the rights provided in the WPCOA collective bargaining agreement for the purpose of determining whether the Deputy Commissioner has been properly removed from the Warren Police Department or barred from returning to the position of lieutenant only.

> Provided, however[,] that these rights shall be limited to a discharge or suspension from employment arising from a disciplinary decision, not his removal of him as Deputy Commissioner, which shall not be subject to review.  The Parties acknowledge that the Mayor reserves the right to remove the Employee from his appointed position at any time with or without cause at any time at his sole discretion.  No arbitrator or other body has jurisdiction to reinstate the employee to the position of Deputy Commissioner, but would only be able to return him to his former rank of lieutenant.

(Emp. Agmt. ¶ 5, R. 50-1, PageID 1469–70)

The CBA sets out a procedure for filing and resolving grievances filed by "employee[s] in the bargaining unit." (CBA Art. 29, R. 55-8, PageID 1643–47)  "[E]ach step must be adhered to and an earnest effort shall be made to promptly resolve grievances." (*Id.* at Art. 29(C), R. 55-8, PageID 1643)  First, an employee with a grievance may discuss his complaint with his immediate supervisor.  Second, if that oral discussion does not satisfactorily resolve the grievance, the unit representative may submit the grievance in written form to the Commissioner.  Within seven days, the Commissioner must discuss the grievance with the Grievance Committee, and if it is not "satisfactorily adjusted," the Commissioner must issue a written answer within seven days after the meeting.  Third, the grievance may be referred to the Labor Relations Director, who must meet

with the Grievance Committee to discuss the grievance. If the grievance is not "satisfactorily adjusted" at that meeting, the Labor Relations Director must issue a written answer within fourteen days. Fourth and finally, any unresolved grievance already "processed through Step 3 of the grievance procedure[] may be submitted to arbitration," by filing a demand to arbitrate with the American Arbitration Association or Federal Mediation and Conciliation Service. The right to compel arbitration is "exclusively [] held by the Union and the City only," which parties are to share equally the expenses of arbitration. (CBA Art. 29(F)(Step 4)(1), (8), R. 55-8, PageID 1645–46)

On July 18, 2018, Plaintiff was involved in the arrest of a group of individuals suspected of shoplifting. During the arrest, Nichols alleges, he pushed one of the arrestees "with an open hand." About a week later, Nichols was called in for a meeting with Dwyer; Mark Simlar, the Warren personnel director; Dan Bradley, of the Warren Police Department; and Rachael Badalamenti, the "the city attorney." Before the meeting, general references were made to "excessive force" but Nichols was not provided with notice of any potential charges against him. At the meeting, Nichols was advised of his *Miranda* rights and provided with a *Garrity* warning. (*Id.*) Another meeting followed on August 8, involving the same participants and similar content. Nichols was not provided with a notice of the charges against him before this meeting either.

Dwyer then placed Nichols on unpaid administrative leave as of August 27, 2018 and asked the Macomb County Sheriff's Department to investigate the alleged misconduct. According to Nichols, the file Dwyer provided to that Department omitted an "exculpatory" recording. (The Sheriff's Department conducted its investigation and submitted its findings to the County Prosecuting Attorney, who declined to issue a warrant for Nichols's arrest. Dwyer told a local newspaper that he was "disappointed" with the prosecutor's decision. Fouts commented to another

newspaper that the investigation into Nichols was "an internal matter within the police department" to which he was not "privy," but that he had "always thought highly" of Nichols.

Nichols alleges that Dwyer terminated his employment on or about December 20, 2018 and that by December 21, Dwyer had removed Nichols's name and title from his office door, and his photograph from the wall of the police department. Dwyer also requested that the Department of Justice and the Federal Bureau of Investigation open an investigation into Nichols.

On May 30, 2019, the Warren Police Department issued formal "charges and specifications" against Nichols. Drafted by Bradley but addressed to and approved by Dwyer, the charges alleged that Nichols had used excessive force, failed to report a use of force, uttered falsehoods after a *Garrity* warning, created a hostile work environment, and engaged in conduct unbecoming an officer. Nichols had the opportunity to respond in writing to these charges at a *Loudermill* hearing on June 11, but was not permitted to question Bradley. On June 14, Dwyer informed Nichols by letter that his employment with the police department had been terminated, copying George Dimas, Human Resources; Ethan Vinson, City Attorney; and Badalamenti, Litigation Counsel. (Am. Compl. Ex. 4, R. 50-4, PageID 1502) Dwyer instructed Nichols to turn in any Police Department equipment or records by having his counsel contact Badalamenti. (*Id.*)

Plaintiff's counsel contacted Vinson on June 15 seeking information on "the steps . . . which DC Nichols must follow to invoke Arbitration" under his employment contract, but the City refused to provide an answer. (Am. Compl. ¶ 21, R. 50, PageID 1444; R. 55-2, PageID 1608) On June 24, Plaintiff's counsel informed Badalamenti by e-mail that he was "invoking arbitration under section 5 of the contract between DC Nichols and the City," and asked for alternate instructions if his e-mail was not the correct method to demand arbitration. (Am. Compl. Ex. 3, R. 50-3, PageID 1482) Badalamenti responded with an e-mail that read, in part:

I have no idea how you seek arbitration for an individual expressly exempt from all rights provided for by the WCO CBA. Your client hasn't paid dues to the Association in years, which confirms his knowledge that he was exempt. He cannot be exempt and entitled to the rights provided by the CBA at the same time. Likewise the contract cannot be a basis for arbitration. The contract paragraph you refer to is effective only upon "removal from" the DC position "by the Mayor." Your client wasn't removed from his position, he was terminated as part of a disciplinary proceeding, and there was no action by the Mayor at all regarding [the charges and specifications]. This was confirmed via the Specs and Charges and at the Loudermill Hearing.

In short, I have no information to assist you in getting this matter to arbitration. Your client has no contract right to it.

(*Id.*, R. 50-3, PageID 1481) In July 2019, Nichols's counsel served a demand for arbitration with the Federal Mediation and Conciliation Service, which Defendants rejected.

### B. Procedural History

Nichols filed his complaint on December 26, 2018, before his hearing in June 2019, then filed an amended complaint on July 29, 2019. Defendants filed a motion to dismiss on August 28, 2019, and Plaintiff filed a motion for partial summary judgment to compel arbitration on November 15. On February 19, 2020, the district court denied the motion for summary judgment and granted the motion to dismiss. On appeal, Nichols challenges the denial of his motion for summary judgment; the dismissal of his due process claims against Fouts, Dwyer, and the City of Warren, particularly while discovery was pending; and the denial of oral argument.

## II. ANALYSIS

### A. Plaintiff's Motion for Partial Summary Judgment to Compel Arbitration

This Court reviews de novo the district court's conclusion that Nichols failed to establish his right to compel to arbitration. *See In re: Auto. Parts Antitrust Litig.*, 951 F.3d 377, 381 (6th Cir. 2020). Nichols argues that (1) this dispute is governed by Michigan law rather than the Federal Arbitration Act, (2) the district court improperly decided the arbitrability of this dispute rather than

leaving that question for the arbitrator, and (3) under his Employment Agreement, Nichols was entitled to compel arbitration. We address each contention.

1.     Applicability of the Federal Arbitration Act

The Federal Arbitration Act, enacted pursuant to Congress's authority under the Commerce Clause, U.S. Const., Art. I, § 8, cl. 3, provides that:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. This text coincides with the full scope of Congress's expansive power under the Commerce Clause, *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 274, 278–81 (1995), to "regulate 'the channels of interstate commerce,' 'persons or things in interstate commerce,' and 'those activities that substantially affect interstate commerce,'" *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 536 (2012) (quoting *United States v. Morrison*, 529 U.S. 598, 609 (2000)). Those powers may be exercised "'in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent 'a general practice' . . . [that] bear[s] on interstate commerce in a substantial way." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56–57 (2003) (per curiam) (alterations in original) (quoting *Mandeville Island Farms, Inc. v. Am. Crystal Sugar Co.*, 334 U.S. 219, 236 (1948)).

Nichols contends that the Employment Agreement, which he alleges incorporates certain rights provided by the CBA, is the source of his right to arbitrate. Individual "[e]mployment contracts, except for those covering workers engaged in transportation, are covered by the FAA." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). And the mere fact that a municipality was

Nichols's employer does not remove the Employment Agreement from the ambit of the FAA. *See McGee v. Armstrong*, 941 F.3d 859, 862, 865 (6th Cir. 2019) (applying the FAA to an employment contract between a municipal entity and an employee). In the aggregate, employment contracts—which affect the wages, benefits, pensions, job security, and purchasing power of public employees—plainly "bear[] on interstate commerce in a substantial way." *Alafabco*, 539 U.S. at 57. As the Second Circuit has explained, "Congress has authority to regulate public employment under the Commerce Clause, just as it can regulate employment in the private sector, so long as such regulation is not 'destructive of state sovereignty or violative of any constitutional provision.'" *Adams v. Suozzi*, 433 F.3d 220, 225 (2d Cir. 2005) (quoting *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 537, 554–57 (1985) (affirming constitutionality of the Fair Labor Standards Act as applied to municipal employer)). Here, the Employment Agreement "evidence[s] a transaction involving commerce," 9 U.S.C. § 2, the municipality agrees that the FAA applies, and Nichols offers no argument why such application would infringe on Michigan's sovereignty. On this record, the FAA applies.

### 2. The Power to Decide Arbitrability

Under the terms of Nichols's personal Employment Agreement, we look to the provisions of the FAA. The FAA "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). It requires courts to "rigorously enforce' arbitration agreements according to their terms," and refer disputes to arbitration when an agreement so requires. *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). But whether an agreement requires the parties to arbitrate their dispute is a "'question of arbitrability' for a court to decide." *In re: Auto. Parts Antitrust*

*Litig.*, 951 F.3d at 381 (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). Although parties may agree to delegate that question to an arbitrator, "courts 'should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.'" *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 531 (2019) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "[I]n effect, this rule reverses the usual presumption in favor of arbitration when it comes to questions of 'arbitrability.'" *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844 (6th Cir. 2020) (citing *First Options*, 514 U.S. at 944–45).

Nichols first argues that arbitrators must decide arbitrability whenever the parties have agreed to arbitration. As explained, however, arbitrators are to determine whether a dispute is arbitrable only when the parties have delegated that specific question to them—not when they have agreed to arbitration as a general matter. Nichols also contends that "clear and unmistakable" evidence of his and Defendants' intent to arbitrate arbitrability can be found in his Employment Agreement's reference to the CBA's requirement that arbitration must be invoked "by filing a demand . . . with the American Arbitration Association [AAA] or Federal Mediation and Conciliation Service [FMCS]," (CBA, R. 55-6. PageID 1645), because AAA arbitrators have the power to resolve arbitrability questions. *See Blanton*, 962 F.3d at 844–45. But FMCS takes the opposing view, explicitly providing that its arbitrators do not have the power to decide arbitrability. Thus, this provision does not provide "clear and unmistakable evidence" that Nichols and Defendants agreed to delegate arbitrability questions to the arbitrator. It is therefore our role to decide whether under Nichols's individual Employment Agreement, his dispute is subject to arbitration.

### 3. Arbitrability of This Dispute

In construing and enforcing a private agreement to arbitrate, the court's goal is to "give effect to the contractual rights and expectations of the parties." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). So "[b]efore compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 416 (6th Cir. 2011) (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)). We conduct that review with reference to the state law that governs the individual's contract. *Id.*

The Employment Agreement provides that if Nichols is "terminate[d] or suspend[ed] . . . for disciplinary reasons under circumstances that could cause his removal from the department or inability to return as a lieutenant," he would be "afforded the rights provided in the WPCOA collective bargaining agreement for the purpose of determining whether the Deputy Commissioner has been properly removed from the Warren Police Department or barred from returning to the position of lieutenant only." (Emp. Agmt. ¶ 5, R. 50-1, PageID 1469–70) Thus, this dispute is governed by an incorporated provision of the CBA, which provides that "the right to proceed to arbitration shall exclusively be held by the Union and the City only." (CBA Art. 29(F)(1)) And that right is triggered only upon completion of the first three steps of the specified grievance procedure. So, there is no valid agreement to arbitrate that covers Nichols's claims here.

Nichols contends that he has a right to arbitration "under the provisions of his employment agreement, which incorporated not the 4-step grievance-arbitration procedure but included only

[the] arbitration process of the WPCOA Collective Bargaining Agreement." He argues that as Deputy Commissioner he was not a member of the bargaining unit and had no union representative. As a result, Nichols contends, the first three steps of the grievance procedure did not apply and he was entitled to skip directly to step 4 and individually exercise the union's right to proceed to arbitration.

That interpretation cannot be sustained by the text. The Employment Agreement refers generally to "the rights provided in the WPCOA collective bargaining agreement," and specifically says that "[n]o arbitrator or other body has jurisdiction to reinstate the employee to the position of Deputy Commissioner." (Emp. Agmt. ¶ 5, R. 50-1, PageID 1469–70) Neither of these clauses provides an independent right to arbitration or eliminates the first three steps of the grievance procedure. As the CBA makes clear, upon removal from his appointment as Deputy Commissioner, Nichols was to be returned to the bargaining unit, from which position he could initiate the four-step grievance process described in the CBA. Even then, the right to proceed to arbitration would "exclusively be held by the Union and the City only." (CBA Art. 29(F)(1)) The district court therefore correctly denied Nichols's motion for summary judgment compelling arbitration.

### B. Defendants' Motion to Dismiss Plaintiff's Due Process Claims

We review de novo the district court's dismissal of Nichols's claim that Dwyer, Fouts, and the City of Warren deprived him of his position in the police department in a manner that violated his rights to procedural and substantive due process. *Schwamberger v. Marion Cnty. Bd. of Elections*, 988 F.3d 851, 856 (6th Cir. 2021). Plaintiffs' claims may proceed only if they "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Claims have "facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

1.      Procedural Due Process

For his due process claim to survive a motion to dismiss, Nichols must allege that he had a property interest protected by the Due Process Clause, and that he was deprived of it without the process required by law. *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 904 (6th Cir. 2014). To hold the City of Warren liable for such deprivation, he must plausibly allege "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

i.  *Property Interest*

State law determines whether a given government employee's job constitutes a protectable property interest. *Pucci v. Nineteenth Dist. Ct.*, 628 F.3d 752, 765–66 (6th Cir. 2010). "Michigan law generally presumes that employment relationships are 'at-will' arrangements" and do not create property interests. *Id.* at 766. That presumption may be overcome, however, if a plaintiff can demonstrate that he was a "just cause" employee, through:

> (1) proof of a contractual provision for a definite term of employment or a provision forbidding discharge absent just cause; (2) an express agreement, either written or oral, regarding job security that is clear and unequivocal; or (3) a contractual provision, implied at law, where an employer's policies and procedures instill a legitimate expectation of job security in the employee.

*Id.* (quoting *Lytle v. Malady*, 579 N.W.2d 906, 911 (Mich. 1998)).

The Employment Agreement provided that Nichols could be dismissed from his appointed position as Deputy Commissioner without cause; as a result, he had no property right in that

appointment. The Agreement also provided, however, that if Nichols were removed from his appointed position, he had the right to return to his former position. (Emp. Agmt. ¶ 5, R. 50-1, PageID 1469) And if Nichols were terminated or suspended from his role for disciplinary reasons that would bar him from returning to his prior position or another position in the Department, he would be entitled to return to the bargaining unit as a Lieutenant, and to have the right to use the CBA's grievance procedures. Defendants argue that these procedures are irrelevant because an arbitration process cannot be a property right. But that misses the point: Nichols's contractual right to invoke the CBA's grievance procedures to determine whether his removal from the Department is proper under the CBA would "instill a legitimate expectation of job security" in any employee. *See id.* As a result, Nichols has alleged that he did have a constitutionally protectable property interest in his continuing employment as a Lieutenant in the bargaining unit of the Warren Police Department. *See Hudson v. City of Highland Park, Michigan*, 943 F.3d 792, 801 (6th Cir. 2019).

At oral argument and before the district court, Defendants argued that Nichols did not have a property interest in his employment because he could be removed at any time, and because section 5 of the Employment Agreement is triggered only upon removal by the Mayor. Section 5 does appear to condition the Deputy Commissioner's right to invoke the CBA procedures upon termination or suspension by the Mayor: "In the event the Mayor terminates or suspends the Deputy Commissioner for disciplinary reasons under circumstances that could cause his removal from the department or inability to return as a lieutenant, the Deputy Commissioner will be afforded the rights provided in the WPCOA collective bargaining agreement . . . ." (Emp. Agmt. ¶ 5; R. 50-1, PageID 1469) But it also indicates, albeit not artfully, that only the Mayor has the power to terminate or suspend the Deputy Commissioner at all:

> The Deputy Commissioner is appointed by the Mayor of the City of Warren and he shall serve at the pleasure of the Mayor. He may be terminated at any time and for any reason with or without cause, and without prior notice. . . . In the event the Mayor decides that the services of the Employee are no longer needed in this appointed position, for any reason or no reason at all, the Employee shall have the right to return . . . to his former position.

(*Id.* ¶ 1, R. 50-1, PageID 1469) Nothing in the text of the Employment Agreement contemplates termination or suspension by the Commissioner. A reasonable employee executing this Employment Agreement would therefore believe that only the Mayor could terminate or suspend him for disciplinary reasons, and that he would always be entitled to the rights provided by the CBA if his position as Lieutenant were threatened. In other words, he would have "a legitimate expectation of job security." *Pucci*, 628 F.3d at 766. That is all that is required to allege a constitutionally protected property interest.

### ii. Procedural Protections Required by Due Process of Law

The next question is whether, in firing Nichols from the Department,[1] Defendants "afforded [Nichols] the procedures to which government employees with a property interest in their jobs are ordinarily entitled." *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 620 (6th Cir. 2013) (quoting *Miller v. Admin. Off. of the Cts.,* 448 F.3d 887, 895 (6th Cir. 2006). "Due process is flexible and calls for such procedural protections as the particular situation demands." *Gilbert*, 520 U.S. at 930 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). Three factors are relevant in determining what process is due: (1) "the private interest that will be affected"; (2) "the risk of an erroneous deprivation through the procedures used and the probable value, if any, of any additional or substitute procedural safeguards"; and (3) "the Government's interest." *Id.* at 931–

---

[1] In his Amended Complaint, Nichols also asserts a due process claim based on his ten-month-long suspension without pay. Because there was no pre-suspension hearing or a prompt post-suspension hearing, that claim might have some viability. *See Gilbert v. Homar*, 520 U.S. 924, 934–35 (1997). But Nichols did not raise that argument in response to Defendants' motion to dismiss or in briefing on appeal. At oral argument, counsel clarified that Nichols is not pursuing on appeal a due process claim based on his suspension.

32 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). A public employee facing termination must be provided with oral or written notice of the charges against him or her, an explanation of the employer's evidence, and an opportunity to present his or her side of the story. *Kuhn*, 709 F.3d at 620 (citing *Gilbert*, 520 U.S. at 929). These procedures serve as an "initial check against mistaken decisions," to determine "whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545–46 (1985). Post-termination, the employee must have the opportunity for a full evidentiary hearing before a neutral decision-maker. *Farhat v. Jopke*, 370 F.3d 580, 596 (6th Cir. 2004); *see also Loudermill*, 470 U.S. at 546–47. Nichols agrees that the hearing held before his employment was terminated was adequate but argues that he was deprived of his right to a post-termination evidentiary hearing.

"[I]t is the *opportunity* for a post-deprivation hearing before a neutral decisionmaker that is required," and so "grievance procedures provided by a collective bargaining agreement can satisfy a plaintiff's entitlement to post-deprivation due process." *Farhat*, 370 F.3d at 596 (quoting *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1256 (10th Cir. 1998)); *see also Buckner v. City of Highland Park*, 901 F.2d 491, 497 (6th Cir. 1990). If constitutionally sufficient administrative procedures are available, a plaintiff's failure to take advantage of them cannot give rise to a due process claim. *Farhat*, 370 F.3d at 596. In light of these principles, we have held that due process is satisfied even where post-termination arbitration is available only at the union's discretion, and the union elects not to exercise it. *Rhoads v. Bd. of Educ.*, 103 F. App'x 888, 897 (6th Cir. 2004). Under such circumstances, the union is an employee's voluntarily chosen "sole and exclusive bargaining representative"; it owes the employee a duty of fair representation, and in exchange has

"the ultimate power to make a fair and responsible determination as to whether it would invoke the arbitration provision." *Id.* (quoting *Jackson v. Temple Univ.*, 721 F.2d 931, 933 (3d Cir. 1983)).

Relying on *Farhat* and *Rhoads*, the district court concluded that Nichols's right to a post-termination hearing was satisfied by the grievance procedure set forth in the CBA, even if arbitration could be invoked only by the Union. Nichols's failure to follow the grievance procedures in the CBA, the court reasoned, "waived his procedural due process claim." *Nichols v. Dwyer*, No. 18-14041, 2020 WL 815478, at *6 (E.D. Mich. Feb. 19, 2020) (quoting *Farhat*, 370 F.3d at 597))

That reasoning assumes a fact contradicted by the pleadings: that the post-deprivation grievance procedures in the CBA were actually available to Nichols. *See Farhat*, 370 F.3d at 596. Consider first the text of the relevant contracts. Under the Employment Agreement, if Nichols was terminated from his appointed position and from the Department entirely, he was entitled to the rights provided in the CBA to determine if that termination was proper. The CBA states that a deputy commissioner has the right to return to the bargaining unit upon removal from his appointed position. It also sets out a four-step grievance procedure, defining a "grievance" as "a dispute, claim, or complaint arising under and during this Agreement and *filed by an employee in the bargaining unit*." (CBA Art. 29(A), R. 55-8, PageID 1643 (emphasis added))

Taking the provisions of Nichols's Employment Agreement and the CBA together, Defendants were obligated to return Nichols to his prior post in the bargaining unit, making him eligible to initiate the grievance procedure. But Defendants asserted at argument that they were not required to return Nichols to the bargaining unit and could not do so as a practical matter. Instead, they argue, Article 36 of the CBA and section 5 of the Employment Agreement give a removed deputy commissioner the right to directly invoke the grievance procedure. This

interpretation is at odds with Defendants' position during the alleged events and fails on its own terms. Neither section 5 of the Employment Agreement nor Article 36 of the CBA refer to the grievance procedure. Section 5 refers generally to "the rights provided in the WPCOA collective bargaining agreement," and Article 36 provides that a deputy commissioner has the same right to be returned to the bargaining unit as that granted a captain. (A captain has the right to return to his former rank if removed from his position.) Defendants' arguments are unavailing because they granted these rights to Nichols by entering into the relevant agreements.

Nichols was not afforded the opportunity to return to the bargaining unit. Dwyer fired Nichols in a letter that simply set forth the reasons for the termination, instructed him to return Police Department property, and directed him to contact Badalamenti, "litigation counsel," to coordinate returning that property. After his employment was terminated, Nichols contacted Badalamenti to ask "what steps [he needed to] take to invoke arbitration." (R. 50-3, PageID 1482) Badalamenti told Nichols that he was "expressly exempt from all rights provided for by the WCO CBA," and was not "entitled to the rights provided by the CBA." (R. 50-3, PageID 1481) She also told him that section 5 of the Employment Agreement—the provision stating that before removing Nichols from the police department for disciplinary reasons, he was to be afforded the rights provided by the CBA—did not apply because Nichols was terminated from his position, rather than "remov[ed]" by the Mayor. (*Id.*) "In short," she concluded, she had "no information to assist you in getting this matter to arbitration." (*Id.*)

These facts set this case apart from *Farhat* and *Rhoads* and make it more similar to *Rodgers v. 36th Dist. Court*, 529 F. App'x 642, 649 (6th Cir. 2013). In *Rodgers*, a CBA provided procedures through which the plaintiffs, discharged employees, submitted their grievances, but the employer—a state district court—rejected their demands for arbitration before a neutral

decisionmaker. We concluded that was "enough to establish a constitutional violation under *Farhat*." *Id.* So too here. Dwyer terminated Nichols but failed to return him to the bargaining unit. Defendants then rejected Nichols' request for instructions on how to pursue his rights under the CBA, claiming that he was not entitled to any rights provided in the CBA because he was an exempt employee and not in the bargaining unit. These actions rendered the grievance procedures of the CBA unavailable to Nichols, and so the arbitration provision could not satisfy Nichols's right under *Loudermill* to a post-termination hearing. Nichols has therefore adequately pled his claim that he was deprived of his due process rights by Dwyer.

The district court did not reach the further question of whether Nichols stated a due process claim against the City of Warren. Badalamenti, however, is counsel for both Dwyer and the City of Warren and her June 24 e-mail provided the City's position. As to whether the City may be held liable based on Dwyer's acts, the Amended Complaint alleges that Dwyer had final decision-making authority over Nichols's employment. Under the Warren City Charter, the Police Commissioner "shall, subject to the approval of the [M]ayor, organize and conduct the department under him in a manner consistent with good practices for cities comparable to the City of Warren." WCC § 7.17. The complaint alleges that Commissioner Dwyer had plenary authority over disciplinary and personnel decisions: Nichols was formally appointed by the former Police Commissioner, Dwyer suspended him, the charges and specifications were addressed to Dwyer, and Dwyer ultimately terminated his employment. (R. 55-6, PageID 1637; Am. Compl. ¶ 38 & Ex. 4, R. 50, PageID 1449, 1486–99, 1502) *See Monistere v. City of Memphis*, 115 F. App'x 845, 852–53 (6th Cir. 2004) (finding that the municipal director of police services had final policymaking authority over all police department activities based on the city code as well as "local practice and custom" (quoting *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993))).

It is true that "mere authority to exercise discretion while performing particular functions does not make a municipal employee a final policymaker unless the official's decisions are final and unreviewable and are not constrained by the official polices of superior officials." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 814 (6th Cir. 2005) (quoting *Feliciano*, 988 F.2d at 655)). And the Warren City Charter and the Agreement provide that it was Mayor Fouts who had authority to remove Nichols from his appointed position. But Nichols did not have a property interest in his position as Deputy Commissioner. His protectable interest was in his position in the bargaining unit of the Warren Police Department. And Fouts himself—Dwyer's only superior, *see* WCC § 7.17—commented to the press that the investigation was an internal matter at the police department to which he was not privy. That indicates that Dwyer's decision removing Nichols from the department altogether was not subject to review by a superior. *See id.* At this stage, that is a sufficient allegation that Dwyer had final policymaking authority to issue charges against Nichols, hold a disciplinary hearing, and fire him, such that the City of Warren may be liable for any attendant deprivation of due process.

We turn to the claims against Mayor Fouts. As the Amended Complaint itself alleges, Fouts was not involved in Nichols's suspension, disciplinary proceeding, or ultimate termination. His mere supervisory authority over Dwyer under the City Charter is not sufficient to give rise to his liability in the absence of any allegations of "active unconstitutional behavior" on his own part. *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). Although Badalamenti entered her appearance on behalf of all Defendants in this action in February 2019, Nichols's counsel initially contacted her pursuant to Dwyer's instructions in the termination letter, which copied Badalamenti; Vinson, the City Attorney; and Dimas, Human Resources. In her response, Badalamenti explained that Nichols had

been "terminated as part of a disciplinary proceeding," and that "there was no action by the Mayor at all" as to the charges issued against Nichols. (R. 50-3, PageID 1481) Without more, Nichols's claims against Fouts must fail.

### C. Substantive Due Process

To make out a substantive due process claim, Nichols must demonstrate that he was deprived of a constitutionally protected liberty or property interest, as well as "conscience-shocking conduct" by the government that was "constitutionally repugnant." *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 765–66 (6th Cir. 2020) (quoting *Guertin v. Michigan*, 912 F.3d 907, 922 (6th Cir. 2019)). In that analysis, "abuse of power" serves as "the North Star." *Id.* at 766 (quoting *Guertin*, 912 F.3d at 923). We consider whether Defendants' acts amounted to deliberate indifference, as evidenced by the type of harm inflicted, the risk of the harm occurring, the officials' awareness of that risk of harm, whether a legitimate governmental purpose motivated the act, and whether they had time to fully consider the potential consequences of their conduct. *Id.*

Nichols makes a cursory reference in his Amended Complaint to a substantive due process claim. But he did not defend or even refer to this claim in his response to Defendants' motion to dismiss, which sought to dismiss the complaint in its entirety and contended in a footnote that Nichols had not alleged any conduct that shocked the conscience. Finding Nichols's treatment to be "perfunctory," *see McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997), the district court dismissed the claim as forfeited. The court did not err in doing so. And on appeal, Nichols again makes only a cursory reference to the concept of substantive due process, and offers no argument supporting the conclusion that Defendants engaged in an abuse of power that shocked the conscience. The claim was forfeited.

**D. Other Challenges**

Nichols also argues that the district court abused its discretion by deciding the parties' motions without affording oral argument and with discovery pending. But "[t]he very purpose of Fed. R. Civ. P. Rule 12(b)(6) 'is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery.'" *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003) (quoting *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987)). And under the local rules for the Eastern District of Michigan, for a motion to dismiss or a motion for summary judgment, "[t]he court will hold a hearing . . . unless the judge orders submission and determination without hearing." E.D. Mich. Local Rule 7.1(f)(2). In its opinion and order, the district court explained that it was deciding the pending motions "based on the parties' briefing." That choice was within the court's discretion under the local rules and the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 78.

### III.   CONCLUSION

Because Nichols can point to no contract provision providing him individually with a right to arbitrate this dispute, the district court's denial of his motion for partial summary judgment compelling arbitration is **AFFIRMED**. For the reasons stated above, the district court's dismissal of Nichols's procedural due process claim against Dwyer and the City of Warren is **REVERSED**. Because the district court correctly found that Nichols makes no allegations against Defendant Fouts that would give rise to a procedural due process claim, and because the Amended Complaint fails to state a substantive due process claim against any Defendant, the district court's order dismissing those claims is **AFFIRMED**, as is the denial of Nichols's request for oral argument. The case is remanded to the district court for further proceedings consistent with this opinion.